# EXHIBIT A

Dockets.Justia.com

```
RODI, POLLOCK, PETTKER, GALBRAITH
& CAHILL, A Law Corporation
ANDREW W. BODEAU (SBN 183600)
KENNETH A. FRANKLIN (SBN 143809)
444 South Flower Street, Suite 1700
Los Angeles, California 90071-2901
Telephone:   (213) 895-4900
Facsimile:   (213) 895-4921

STEVEN A. KLENDA, LLC
STEVEN A. KLENDA, ESQ. (admitted pro hac vice)
600 Grant Street, Suite 300
Denver, Colorado 80203
Telephone:   (303) 514-3179
Facsimile:   (303) 861-1777
```

FILED
LOS ANGELES SUPERIOR COURT

MAR 1 8 2004

JOHN A. CLARKE, CLERK

BY JEFF W. LIPP, DEPUTY

Attorneys for Plaintiff,
SPEHAR CAPITAL, LLC, a California limited liability company

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

(NORTH CENTRAL DISTRICT -- BURBANK)

| | |
|---|---|
| SPEHAR CAPITAL, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CMGT, INC., a Delaware corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. EC 037602<br><br>**JUDGMENT AND PERMANENT INJUNCTION AGAINST CMGT, INC.**<br><br>Dept.:   NC"A" |

This matter came before the Court on the motion of Plaintiff, Spehar Capital, LLC ("Spehar") for a default judgment against defendant, CMGT, Inc. ("CMGT"). On February 26, 2004, at 08:30 a.m., the Court held a hearing on Spehar's motion, during which Spehar Capital's President, Gerry Spehar, testified and presented evidence regarding its damages from CMGT's breach of Spehar Capital's contract. Having reviewed the pleadings and heard testimony and received evidence on Spehar's damages, and being sufficiently advised of their premises, the Court enters the following findings of fact and conclusions of law:

270957_1.doc                               1
JUDGMENT AND PERMANENT INJUNCTION AGAINST CMGT, INC.

1. CMGT was validly served with Spehar's First Amended Complaint on December 8, 2003.

2. The Court has jurisdiction over CMGT under Cal. Code Civ. P. 410.10, because CMGT has purposefully availed itself of the benefits and burdens of doing business in California and CMGT has sufficient minimum contacts with California to satisfy due process. CMGT has directed a steady and numerous stream of business contacts and communications to California during the past two years, specifically:

   a. Spehar Capital contracted with CMGT in California.

   b. CMGT has transacted business in California by providing services to several clients that are located in California and partnering with other California businesses.

   c. Over the course of the over 2 years preceding this action, CMGT's President, Lou Franco, deliberately directed extensive daily telephone and email communications to Spehar Capital in California, and CMGT's President has traveled to California to meet with CMGT's clients, and Spehar Capital.

   d. CMGT attempted to raise capital from at least one investor, the Washoe tribe, which is located in California.

3. CMGT has not answered Spehar's First Amended Complaint, entered an appearance or responded in any way to any pleading in this case.

4. The clerk entered a default against CMGT on January 12, 2004.

5. Because CMGT has not answered Spehar's First Amended Complaint, all allegations in the First Amended Complaint are deemed to have been confessed. Johnson v. Stanhiser, 72 Cal.App.4th 357, 361 (1999). The Court incorporates these deemed admissions by reference herein as findings of fact.

6. Spehar has proven damages in the following amounts for the following items for which Spehar's contract with CMGT entitles Spehar to compensation:

   a. Legal Expenses                    58,863.00
   b. Cash Success Fee                 150,000.00
   c. Management Consulting Fee        100,000.00

|   |   |   |   |
|---|---|---|---|
| d. | Stock Compensation | | 11,253,627.00 |
| e. | Investment Banking Rights | | 5,483,290.00 |
| | Total | | 17,045,780.00 |

7. Spehar's damages are: (a) based on either specific dollar amounts that are set forth in its contract with CMGT, or on facts, figures, projections and assumptions that are either the same as, or not materially different from, the facts, figures, projections and assumptions that CMGT presented to and that were relied on by both CMGT and potential investors; and (b) otherwise supported by the evidence that Spehar presented.

8. Spehar Capital's damages are reasonably certain to have been realized but for CMGT's wrongful acts.

THEREFORE, the Court:

1. Enters judgment IN FAVOR of Spehar Capital, LLC and AGAINST CMGT, Inc. in the total amount of $17,045,780;

2. Imposes a constructive trust in favor of Spehar Capital, LLC on all assets of any type whatsoever of CMGT and Newco that either CMGT or Newco have transferred: (a) between themselves; (b) to Newco or CMGT shareholders or any other financers of CMGT or Newco (including persons who have loaned or contributed money or other capital to CMGT); or (c) to another person or entity other than in the ordinary course of CMGT's business, as CMGT's business existed and operated at the commencement of this action;

3. Permanently ENJOINS AND RESTRAINS CMGT, Inc. and its officers, agents, servants, employees, representatives, and all persons acting in concert or participating with them, from engaging in, committing, or performing, directly or indirectly, any and all of the following acts:

(a) proceeding with the asset sale transaction between CMGT and Newco;

(b) proceeding with an asset purchase, business or asset sale, or any other financing arrangement of any type whatsoever between CMGT and any other person or entity without the express written consent of Spehar Capital, LLC;

(c) consummating or taking any further steps toward consummating, the asset purchase transaction or any other financing, capital-raising, purchase, sale or other transaction between CMGT and Newco, or any other transaction of any type by CMGT whose terms do not expressly acknowledge, incorporate and comply with all terms of the CMGT-Spehar agreement and this judgment;

(d) selling, transferring, pledging or encumbering any of CMGT's assets or property, other than in the ordinary course of ordinary course of CMGT's business, as CMGT's business existed and operated at the commencement of this action; and

(e) licensing, selling, disposing of, or otherwise authorizing the use any of CMGT's software by a person or entity other than CMGT, taking any action or acting in any way that would diminish the value to CMGT of CMGT's software.

4. Releases the $25,000 bond that Spehar Capital posted in connection with the preliminary injunction that the Court entered on October 3, 2003. To allow Spehar to domesticate this judgment in any other jurisdiction, the Court's preliminary injunction shall remain in full force and effect until midnight on the 20th day after this judgment enters.

ENTERED AND ORDERED this ___ day of March, 2004.

_____
Hon. David M. Schacter
Superior Court Judge, Los Angeles County

# EXHIBIT B

```
                                                                    1
 1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                    FOR THE COUNTY OF LOS ANGELES

 3    DEPARTMENT NCA              HON. D. M. SCHACTER, JUDGE

 4

 5    SPEHAR CAPITAL, LLC,    )
                              )
 6            Plaintiff(s),   )
                              )
 7            vs.             )   No. EC037602
                              )
 8    CMGT, INC.,             )
                              )
 9            Defendant(s).   )
      _____)

10

11              REPORTER'S TRANSCRIPT OF PROCEEDINGS

12                         February 26, 2004

13

14    APPEARANCES

15    For the Plaintiff:        STEVEN KLENDA, ESQ.


                                JEANETTE G. SOTO, CSR #8733
                                Official Reporter
```

COPY

```
                                                                    2
 1                              INDEX

 2   DAY          DATE                      SESSION       PAGE

 3   Thursday     February 26, 2004           A.M.          1

 4

 5

 6

 7                           PROCEEDINGS

 8   Default prove up hearing

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

```
                                                                    1
 1        BURBANK, CALIFORNIA; THURSDAY, FEBRUARY 26, 2004;
 2                          A. M. SESSION
 3   DEPARTMENT NCA                    HON. D. M. SCHACTER, JUDGE
 4             (Appearances as heretofore noted.)
 5             (Jeanette G. Soto, Official Reporter.)
 6
 7        THE COURT:  Spehar Capital.
 8             Swear in the witness, please.
 9        THE CLERK:  You do solemnly swear the testimony
10   you may give in the cause now pending before this court
11   shall be the truth, the whole truth, and nothing but the
12   truth, so help you God?
13        THE WITNESS:  I do.
14        MR. KLENDA:  Steven Klenda on behalf of Spehar
15   Capital.  Present is Gerry Spehar, president.
16
17                         GERRY SPEHAR,
18   called as a witness on behalf of the Plaintiff, was sworn
19   and testified as follows:
20
21                      DIRECT EXAMINATION
22   BY MR. KLENDA:
23        Q    Please state and spell your full name for
24   the record.
25        A    Gerry Spehar, that's what I go by.  My first
26   name is actually Robert.
27        THE COURT:  What would you like to go by today?
28        THE WITNESS:  Gerry.
```

```
 1        THE COURT:  Why don't you sit down and relax.
 2   Please go ahead.
 3        MR. KLENDA:  Your Honor, if you recall, this case
 4   involved Spehar Capital.  It's a Glendale business who
 5   contracted to raise money for a start up company called
 6   CMGT, Inc.
 7             They succeeded.  Two entities signed a
 8   letter of intent to provide capital to CMGT.  This
 9   acceptance of the letter of intent triggered certain
10   provisions in Mr. Spehar's capital contract, excluding
11   investment banking rights, a percentage of stock
12   compensation and a success fee which was 6 percent of
13   $2.5 million.
14             In addition, the capital -- the capital
15   required Mr. Spehar to be paid $100,000 for providing
16   management consulting services, and it contained a fee
17   shifting provision.
18             Those provisions of the contract are
19   detailed in paragraphs 13 to 17 of our complaint.
20        THE COURT:  This was the finder's fee, wasn't it?
21        MR. KLENDA:  Yes.
22        THE COURT:  Go ahead.  You got to have him say
23   something.
24        THE WITNESS:  Dangerous territory, Your Honor.  I
25   say a lot.
26        THE COURT:  So you had a document, which the
27   documents we're going to put into evidence shows that
28   you had it set up into a finder's fee is $100,000, and
```

```
 1   they bilked on it?
 2         THE WITNESS:  The $100,000 is a management
 3   consulting fee.  The finder's fee was $150,000.
 4         THE COURT:  So what are we after today?
 5         THE WITNESS:  Much more than that.  We're also
 6   after evaluation of the stock compensation that I was
 7   owed which was 6 percent of CMGT and evaluation of the
 8   investment banking rights which accrued to be when they
 9   accepted the letter of intent.
10         THE COURT:  So what are the damages that are
11   reflected in the documents of counsel?
12              Sit down, counsel, and relax.
13              What are the documents -- what are the
14   damages in the documents that are -- what documents?
15   Number what?  A through what?
16         MR. KLENDA:  Numbers 1 through 15, Your Honor.
17         THE COURT:  1 though what?
18         MR. KLENDA:  15.
19         THE COURT:  What kind of damages are they for
20   what?  Each one?
21         MR. KLENDA:  For legal expenses $5,863 for the
22   cash.
23         THE COURT:  Now is there something that allows for
24   legal expenses?
25         MR. KLENDA:  Yes, there is.
26         THE COURT:  And the document says attorney's fees?
27         THE WITNESS:  Yes, there's a fee shifting
28   provision in the document.
```

4

1　　　　　THE COURT: What's the next one?

2　　　　　THE WITNESS: Cash success fee which is what you

3　were calling the finder's fee, and that's $150,000.

4　That's 6 percent of the $2.5 million capital rates.

5　　　　　THE COURT: And the next one?

6　　　　　THE WITNESS: I have to write down the manager's

7　fee. In the contract the words were cash success fee,

8　but it is a finder's fee, as you refer to it.

9　　　　　THE COURT: Well, one I understand.

10　　　　　Go ahead.

11　　　　　THE WITNESS: There was a management consulting

12　fee put in the contract on the second revision of the

13　contract because I was doing much more than I was

14　originally called for to do in consulting management,

15　and that was $100,000.

16　　　　　THE COURT: Okay. What else?

17　　　　　THE WITNESS: Stock compensation, I was also when

18　the contract, when the letter of intent was subpoenaed,

19　I was owed 6 percent of the CMGT as common stock. The

20　valuation of that CMGT relied on and investors relied on

21　was a IPO to be done in 2006.

22　　　　　Current valuation of my 6 percent would be

23　$11,253,627.

24　　　　　THE COURT: What's it worth now?

25　　　　　THE WITNESS: That's it. 11 million.

26　　　　　THE COURT: Is CMGT in existence?

27　　　　　THE WITNESS: Yes, it is. Because I have called

28　as late as last week in their call center operations,

5

1  and they are answering the phones.  Beyond that, I can
2  get no information out of CMGT.
3          THE COURT:  Once you have the judgment, they're
4  going to come in and set aside the judgment, and the
5  dance starts all over again.
6          THE WITNESS:  I stand by my representations.
7          THE COURT:  I'm just saying this is what usually
8  happens.  It's like the first dance one person forgot to
9  get up, and the second dance, everybody gets up.
10         THE WITNESS:  Okay.
11         THE COURT:  Okay.  That's fine.
12         THE WITNESS:  And there's one more provision.
13 They, because I was the party who helped them raise the
14 initial capital, I was given what were called investment
15 banking rights for future deals.  So I would be the
16 party if they raised capital for any purposes --
17 financial billing through the IPO -- I would be the
18 party as a investment banker that would be allowed to do
19 that.
20         There's a fee attached to that, of course.
21 I valued the IPO fee in 2006.  My portion of that would
22 be worth today 5,400,000.
23         THE COURT:  But that one is pretty hard because
24 nothing has happened on that yet.  You could have it in
25 your judgment that you had the right to the fee, if it
26 ever occurs, but this may never occur.
27         THE WITNESS:  The investors at CMGT in all of
28 their presentations to investors relied upon an IPO as

```
 1   an extra strategy in 2006.  They relied on that.
 2          THE COURT:  Okay.
 3          THE WITNESS:  And I had a right to do that.
 4          THE COURT:  Okay.
 5          THE WITNESS:  So my value of that fee today would
 6   be $5,438,290.00.
 7          THE COURT:  What does CMGT do?
 8          THE WITNESS:  Own a business called absence
 9   management.  And just to give you a perspective on what
10   companies, how they value this service, 51 percent of
11   the human resource directors in the United States
12   according to a magazine by the name of HR Next that they
13   subscribe to have said it's their biggest headache,
14   absence management, under the family leave act under
15   which a lot of the employees go out, and they have a
16   call center operation.
17              When a client employs them, a client has
18   told all of the employees, "You will now when you're
19   going to be absent call CMGT's call center."  They have
20   a piece of proprietary software that integrates.  CMGT
21   has a proprietary piece of software they wrote which
22   allows for the call center to over the internet
23   integrate all of the employers' data bases on their
24   employees and all of the disability carrier's data bases
25   on that company with a call center.  So that whenever
26   anybody calls in that's sick, that's the funnel.  That's
27   the tip of the funnel from which all information flows
28   out to all of those people.
```

7

1    THE COURT:  All right.  Do you have the judgment
2 ready?
3    MR. KLENDA:  Unfortunately, Your Honor, I do not.
4    THE COURT:  Then you can prepare it up.  Okay so
5 probably one of two things will happen.  They will set
6 it aside, walk away from the company or they will go
7 bankrupt.  It's one of those three things will happen.
8    MR. KLENDA:  That is likely, Your Honor.
9    THE COURT:  Oh, yeah.  Okay.  Thank you very much.
10    MR. KLENDA:  Can I tender the exhibits to the
11 court?
12    THE COURT:  Yes, please.  And we'll put them in
13 the file.  So the exhibits are to be in the file.
14
15          (The proceedings in the above-entitled
16           matter were concluded.)
17
18
19
20
21
22
23
24
25
26
27
28

8

1    SUPERIOR COURT OF THE STATE OF CALIFORNIA

2    FOR THE COUNTY OF LOS ANGELES

3    DEPARTMENT NCA                HON. D. M. SCHACTER, JUDGE

4

5    SPEHAR CAPITAL, LLC,        )
                                  )
6        Plaintiff(s),            )
                                  )
7        vs.                      )    No. EC037602
                                  )
8    CMGT, INC.,                  )
                                  )
9        Defendant(s).            )
                                  )

10   STATE OF CALIFORNIA   )
                           )  SS
11   COUNTY OF LOS ANGELES )

12

13        I, JEANETTE G. SOTO, Official Reporter of the

14   Superior Court of the State of California, for the County

15   of Los Angeles, do hereby certify that the foregoing pages

16   1 through 7 comprise a full, true, and correct transcript

17   of the proceedings held in the above-entitled matter on

18   February 26, 2004.

19        Dated this 25th day of September, 2006.

20

21                              _____ CSR #8733
                                 Official Reporter