IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID GROCHOCINSKI, not individually, but solely in his capacity as the Chapter 7 Trustee for the bankruptcy estate of CMGT, INC. | ) ) ) ) | |
| | ) | Case No. 06 C 5486 |
| Plaintiff, | ) ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| MAYER BROWN ROWE & MAW LLP, RONALD B. GIVEN and CHARLES W. TRAUTNER, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Grochocinski, ("Grochocinski" or the "Trustee") as Chapter 7 Trustee for the bankruptcy estate of CMGT, Inc. ("CMGT") filed suit against Mayer Brown Rowe and Maw, LLP ("MBRM"), Ronald Given ("Given" and together with MBRM, "Lawyer Defendants") and Charles W. Trautner ("Trautner") for legal malpractice.  Before the Court is the Lawyer Defendants' Motion to Dismiss.  For the reasons stated herein, the Lawyer Defendants' Motion to Dismiss is granted in part and denied in part.

## Facts

CMGT entered into an agreement with MBRM for legal services in connection with CMGT's efforts to obtain financing for its operations.  By the terms of the agreement for legal services between MBRM and CMGT (the "Agreement"), MBRM would represent CMGT in connection with its financing efforts and related activities and would be paid its legal fees only in the event CMGT's efforts to obtain financing were successful.

In addition to MBRM, CMGT also hired Spehar Capital, LLC ("Spehar") on a commission basis to locate potential sources of financing for CMGT. After numerous negotiations with potential financiers, MBRM and executives at CMGT settled on a funding opportunity proposed by Trautner, who was CMGT's largest shareholder. The financing was to be provided through creation of a new entity, "Newco," of which CMGT was to have partial ownership.

Trautner brought the Newco deal to CMGT's management – specifically, to Louis Franco ("Franco"), CMGT's Chief Operating Officer – in January 2003. At that time, Trautner, Franco, Given, and Spehar's principal, Gerry Spehar ("Gerry"), discussed the proposal on a conference call during which Franco asked Gerry to question Trautner with respect to the details of the Newco deal. After discussing the proposal, Franco rejected the Newco deal – which would not have honored any of CMGT's investor's notes and would have left CMGT's shareholders with only 20% equity – as a "sweetheart" deal for Trautner and his investors.

Several months later, in or around May 2003, Given and Trautner revived Trautner's Newco deal under terms identical to those that Franco had rejected in January 2003. Given drafted a letter of intent for the Newco deal, the terms of which provided that Newco would purchase all of CMGT's assets for either (1) $500,000; or (2) 20% of the shares of Newco. If CMGT opted to accept 20% of the shares of Newco, Trautner and his investors would be required to provide an assurance that Newco's initial capitalization would be at least $2.5 million. The Trustee alleges that Given pressured Franco to agree to the Newco letter of intent without advising Franco that a better deal (for CMGT) might be available elsewhere because the Newco deal ensured that MBRM's accrued fees would be paid while other potential sources of financing may have left MBRM's fees

2

in doubt.  On or about August 1, 2003, Franco signed the Newco letter of intent, which provided for

closing on September 30, 2003.

Shortly after signing the letter of intent, Franco advised CMGT's shareholders about the

Newco deal.  On August 14, 2003, Franco sent CMGT's shareholders a letter soliciting proxies for

the Newco deal and stating that there were no other sources of financing available – even though

Given and Franco had pre-approved a letter of intent for a proposal Spehar had brought forward from

the Washoe Tribe.

Just before the financing arrangement with Newco was to close, Spehar demanded

commission for the Newco funding deal, asserting that the Newco deal was within the scope of its

agreement with CMGT.  CMGT and MBRM contested Spehar's right to the commission under that

agreement because, they asserted, the Newco letter of intent resulted from negotiations in which

Spehar had played no part.  When CMGT would not agree to pay the commission to Spehar, Spehar

filed suit against CMGT in California (the "California Lawsuit") and moved for a Temporary

Restraining Order ("TRO") to halt the deal between CMGT and Newco.  According to the

complaint, the Lawyer Defendants advised CMGT not to respond to the Motion for TRO.  No one

appeared on CMGT's behalf at the hearing on that motion and the California court entered the TRO

against CMGT, scuttling the Newco deal and preventing CMGT from obtaining financing for its

operations from any other source.  Several months later, Spehar obtained a default judgment against

CMGT in the California Lawsuit in the amount of $17 million.[1]  CMGT offered no defense in the

---

[1]Even accepting the allegations in the complaint as true and viewing the facts as alleged in the light most favorable to the non-moving party – here, the Bankruptcy Trustee – it appears to this Court that the majority of the $17 million award on Spehar's default judgment against CMGT is based upon nothing more than the speculation of Spehar's principle, Gerry Spehar ("Gerry").  For example, Spehar told the California court that he was entitled to 6 percent of CMGT's common stock under his agreement with CMGT.  Spehar

3

California Lawsuit, having been advised by the Lawyer Defendants – according to the complaint – not to appear.

Approximately six months later, using the $17 million default judgment it obtained in the California Lawsuit, Spehar filed an involuntary petition for bankruptcy against CMGT. The Trustee of the bankruptcy estate has filed this two count action against the Lawyer Defendants for legal malpractice. Count I alleges that the Lawyer Defendants provided negligent advice provided to CMGT prior to the California Lawsuit. Among other things, Count I alleges that the Lawyer Defendants failed to advise CMGT to settle its dispute with Spehar before it escalated to litigation and, as a result, CMGT lost any hope of obtaining financing for its operations. Count II alleges that the Lawyer Defendants provided negligent advice to CMGT after the California Lawsuit was filed. Essentially, Count II alleges that the Lawyer Defendants failed to defend CMGT and even advised CMGT not to appear in the California Lawsuit and, as a result, the California court entered the $17 million default judgment against CMGT.

### Standard

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on a motion to dismiss, the court must assume all facts alleged in the complaint to be true and must view the allegations in the light most favorable to plaintiffs. *See, e.g.*, *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). To survive a motion to dismiss, a complaint must set forth facts sufficient to establish a plausible entitlement to relief. *Bell Atlantic*

---

valued that 6 percent at $11,253,627.00, which valuation was based upon the projected value – some two years in advance – of an initial public offering of CMGT that was to have taken place in 2006 but never materialized.

*Corp. v. Twombly*, No. 05-1126, slip op. at 8-9, 550 U.S. ___, 2007 U.S. LEXIS 5901 (May 21, 2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [there] must be enough to raise a right to relief above the speculative level."). In determining the sufficiency of the complaint, courts consider the exhibits to the complaint but where an exhibit conflicts with the allegations in the complaint, the exhibit typically controls. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006) (citing *Centers v. Centennial Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005)).

### Discussion

"To prevail on a legal malpractice claim, the plaintiff client must plead and prove that the defendant attorneys owed the client a duty of care arising from the attorney-client relationship, that the defendants breached that duty, and that as a proximate result, the client suffered injury." *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 856 N.E.2d 389, 394 (Ill. 2006); *see also Keef v. Widuch*, 747 N.E.2d 992, 997 (Ill. App. Ct. 2001). In cases such as this one, these elements effectively demand that the malpractice plaintiff present two cases, one showing that her attorney performed negligently, and a second, or predicate "case within a case," showing that she would have prevailed upon the underlying case but for her attorney's negligence. *Mihailovich v. Laatsch*, 359 F.3d 892, 904-05 (7th Cir. 2004) (citing *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 525-26 (Ill. App. Ct. 1995)).

The Lawyer Defendants argue that the Complaint must be dismissed because: (1) Spehar has orchestrated a fraud on the judicial system; (2) with respect to Count II, the Trustee himself proximately caused the loss to CMGT; (3) with respect to Count II, there are no damages; and (4) the Trustee has not met his burden to plead the existence of a duty, the breach of the duty, or proximate cause of an injury.

5

I.     **Fraud on the Judicial System.**

Quite apart from their arguments as to why the Complaint must be dismissed for its failure

to state a claim, the Lawyer Defendants' opening argument is that the Complaint should be dismissed

as a "fraud on the judicial system."   The Lawyer Defendants argue that: (1) Spehar filed an

admittedly meritless suit against CMGT in California; (2) Spehar then obtained a TRO that

prevented CMGT from obtaining financing, which order, in turn, allowed Spehar to obtain a "bogus"

default judgment against CMGT; (3) Spehar then used the default judgment to file a single-creditor

involuntary bankruptcy action against CMGT; and (4) Spehar then, "orchestrated and funded the

filing of this malpractice suit" against the Lawyer Defendants.

In support of their argument, the Lawyer Defendants cite only one case, *REP MCR Realty,*

*L.L.C. v. Lynch*, 363 F.Supp. 2d 984, 998 (N.D. Ill. 2005),[2] for the unremarkable proposition that

federal courts have the inherent authority to sanction litigants for bad-faith or fraudulent conduct and

that the available sanctions include dismissal with prejudice. "[T]he Supreme Court has indicated

that a sanction under the inherent power is appropriate only where the *party* 'acted in bad faith,

vexatiously, wantonly, or for oppressive reasons.'" *Corely v. Rosewood Care Ctr., Inc.*, 142 F.3d

1041, 1058 (7 th Cir. 1998) (emphasis added) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46

(1991)). "Of all possible sanctions, dismissal is considered 'draconian.'" *Maynard v. Nygren*, 332

---

[2]The Lawyer Defendants' memorandum indicates that the *Lynch* decision collects other decisions
addressing dismissal as a sanction for bad-faith or fraudulent conduct.  In *Lynch*, the plaintiff's case was
dismissed with prejudice because he fabricated documentary evidence and committed perjury.  The cases
collected in the *Lynch* case involve similar situations – situations not presented by the facts as alleged in this
case or by the arguments in support of the Lawyer Defendants' Motion to Dismiss. *See, e.g.*, *Pope v. Fed.
Express Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (manufactured evidence and perjured testimony introduced
in attempt to enhance case); *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) (finding that party
had fabricated an important document and had given it to his attorney and stating that "the present case is
a near-classic example" of "fraud on the court").

F.3d 462, 467 (7th Cir. 2003) (citing *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 223-24 (7th Cir. 1992)).  In order to obtain a dismissal based upon an opposing party's bad faith or fraudulent conduct, a litigant must demonstrate such bad faith or fraudulent conduct by clear and convincing evidence.  *Lynch*, 363 F. Supp.2d at 999 (citing *Maynard*, 332 F.3d at 468).

The most obvious problem with the Lawyer Defendants' argument is that Spehar – which is not a party to this action – is the entity that has allegedly orchestrated a "fraud on the judicial system."  The plaintiff in this case is the Chapter 7 Trustee.  The Lawyer Defendants have not demonstrated by clear and convincing evidence that the Chapter 7 Trustee has perpetrated any fraud on the judicial system.  It would be inappropriate to levy so harsh a sanction as dismissal upon the Trustee absent clear and convincing evidence that the Trustee – and not just Spehar – orchestrated a fraud on the judicial system.  At this point, the only evidence before this Court is a copy of the facially valid default judgment entered by the California court.  Accordingly, the Lawyer Defendants' Motion to Dismiss this case – inasmuch as it is based upon a purported fraud on the judicial system – is denied.

II.     **The Question Whether the Trustee Proximately Caused the Loss Claimed in Count II Cannot be Resolved on the Lawyer Defendants' Motion to Dismiss.**

The Lawyer Defendants argue that, with respect to the $17 million default judgment at issue in Count II, they cannot be held responsible because the Trustee could have moved to vacate the default judgment but did not do so.  The Lawyer Defendants point out that the default judgment against CMGT was entered on March 18, 2004 and they argue that, under California law, CMGT had until September 18, 2004 to file a motion to vacate the default judgment.  *See* Cal. Civ. Proc.

Code § 473(b).[3]  The Lawyer Defendants further argue, citing 11 U.S.C. § 108(b), that the Trustee had an additional sixty days after the bankruptcy court signed an order of relief with respect to CMGT – or until November 15, 2004 – to move to vacate the default judgment.[4]  Accordingly, the Lawyer Defendants conclude that the Trustee cannot, under any circumstances, prove the proximate cause element of his cause of action for legal malpractice against them because the Trustee himself had ample opportunity – nearly two months – to move to vacate the default judgment and failed to do so.[5]

In support of their argument, the Lawyer Defendants cite to *Land v. Greenwood*, 133 Ill. App. 3d 537 (Ill. App. Ct. 1985), for the proposition that a malpractice claim should be dismissed when a successor attorney could have averted the harm caused by the original attorney's alleged negligence.  In *Land*, the plaintiff had two attorneys in the underlying lawsuit.  The first attorney failed to serve several defendants with process before withdrawing from the case.  Approximately four months elapsed after the plaintiff's second attorney took over the case before the defendants were finally served with process.  The defendants then filed motions to dismiss for lack of due diligence in prosecuting the case, which motions were granted by the trial court.  The plaintiff then

---

[3]The Complaint alleges that SC obtained its default judgment against CMGT on February 26, 2004. (Cplt. ¶ 64).  However, Exhibit 17 to the Complaint is a copy of the California court's order entering default judgment against CMGT, which order is dated as having been "Entered and Ordered" on March 18, 2004. Accordingly, the Court finds that the default judgment was entered against CMGT on March 18, 2004 and not on February 26, 2004.  *See Massey*, 464 F.3d at 645.

[4]11 U.S.C. § 108(b) provides, in pertinent part, that "if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor . . . may file any pleading, [or] cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before . . . 60 days after the order for relief."

[5]The Complaint alleges that Grochocinski was appointed trustee in bankruptcy for CMGT on or about September 21, 2004.  (Cplt. ¶ 5).

sued the first attorney for legal malpractice, claiming that the first attorney's negligence caused the dismissal.

Under this particular set of facts, the *Land* court held that the plaintiff could not state a claim for legal malpractice against the first attorney because at the time that attorney was discharged, his duty to the plaintiff had come to an end.  At that time, plaintiff's cause of action was still viable.  At the time the second attorney "got through with" plaintiff's case, the cause of action was no longer viable.  *Id.* at 540.  Because the damage the plaintiff alleged was the loss of a viable cause of action, the court held that the plaintiff could prove no set of facts connecting the first attorney's conduct to the damages he had sustained.

In subsequent cases, Illinois courts have applied *Land* to bar legal malpractice claims where it could not be proven that the first attorney was the proximate cause of the plaintiff's damages. *Sobilo v. Manassa*, No. 06 C 543, 2007 U.S. Dist. LEXIS 19796, *22-23 (N.D. Ill. Mar. 16, 2007) (citing *Mitchell v. Schain, Fursel & Burney, Ltd.*, 332 Ill. App. 3d 618, 623 (Ill. App. Ct. 2002) (first attorney was not the proximate cause of plaintiff's damages even though dismissal resulted from his failure to prosecute the case because there was "no question that plaintiff had an absolute right to refile his cause of action for two years after defendants were discharged" and successor attorney inadvertently failed to do so); *Cedeno v. Gumbiner*, 347 Ill. App. 3d 169 (Ill. App. Ct. 2004) (applying *Land* to hold that trial court's acceptance of legally unsound basis for granting summary judgment served as an intervening cause absolving former attorneys for negligent handling of client's case).

For his part, the Trustee does not argue that a motion to vacate the default was not a course of action he could have or should have taken, but instead responds that this Court may not consider

the Lawyer Defendants' proximate cause argument on a motion to dismiss because doing so would require this Court to consider matters outside the pleadings. *See Travel All Over the World, Inc. v. Elgindy*, 73 F.3d 1423, 1430 (7th Cir. 1996) ("[I]f the district court considers matters outside the pleadings in connection with a motion to dismiss, it must treat the motion as one for summary judgment."). The Trustee argues – without asserting that anything prevented him from moving to vacate the default – that it would be "relevant to [the Lawyer Defendants'] argument to know what information the Trustee had available to him and/or what cooperation the Trustee was getting from CMGT agents prior to the passing of the deadline to vacate the default judgment." (Mem. in Support of Mtn. to Dismiss at p. 25)

But even if it were clear that the Trustee had received all the information and cooperation he needed in order to file a timely motion to vacate the default judgment, the Lawyer Defendants motion to dismiss would still fail. This case is not like *Land*, where the plaintiff's alleged damage was the loss of a viable cause of action that was still viable at the time the first attorney was discharged. In this case, the alleged damage is the $17 million default judgment. That default judgment had already been entered against CMGT at the time the Trustee was appointed. Nor is this case like *Mitchell*, in which there was "*no question* that plaintiff had an *absolute right* to refile his cause of action for two years after defendants were discharged." *Mitchell*, 332 Ill. App. 3d at 623 (emphasis added). The Lawyer Defendants' Motion to Dismiss for lack of proximate cause must be denied because, in this case, there was no absolute right to relief from the default judgment available to the trustee for the asking. Under California law, relief from default under the circumstances of this case is not mandatory. *See* Cal. Civ. Proc. Code § 473(b) (providing, in pertinent part, that a California court "*may*, upon any terms as may be just, relieve a party or his or her legal

10

representative from a judgment . . . taken against him or her through his or her *mistake, inadvertence, surprise, or excusable neglect*") (emphasis added).  As such, it is not clear at this stage whether a motion to vacate the default would have been successful had the Trustee filed such a motion.  In other words, a question remains whether the Trustee's failure to move to vacate the default proximately caused CMGT's damages alleged in Count II, such that it would absolve the Lawyer Defendants from responsibility.

## III.    The Trustee has Adequately Pleaded Damages with Respect to Count II.

The Lawyer Defendants argue that Count II must be dismissed because CMGT has paid nothing to satisfy the default judgment and, therefore, has suffered no damages.   In support of their argument, the Lawyer Defendants cite *Sterling Radio Stations, Inc. v. Weinstine*, 328 Ill. App. 3d 58, 64-65 (Ill. App. Ct. 2002) for the proposition that a judgment debtor that has not paid – and never will pay – any part of a money judgment cannot sue a lawyer for malpractice in connection with that judgment.

The Lawyer Defendants read *Sterling* too broadly.  The Illinois Supreme Court has instructed that:

> *Sterling* did not speak to the issue of whether unsatisfied judgments can constitute actual damages in legal malpractice actions.  Rather it addressed the separate question of whether benefits received by an injured party from a source independent of and collateral to the tortfeasor will diminish the damages the injured party could otherwise recover from the tortfeasor.

*N. Illinois Emergency Physicians v. Landaut, Omahana & Kopka, Ltd.*, 216 Ill.2d 294, 309 (2005).  Though the *NIEP* court did not decide the question whether unsatisfied judgments can constitute actual damages in legal malpractice actions, the Illinois Appellate Court has answered that question in the affirmative.  *Gruse v. Belline*, 138 Ill. App. 3d 689, 698 (Ill. App. Ct. 1985) (citing *Montfort*

*v. Jeter*, 567 S.W.2d 498 (Tex. 1978) for the proposition that "an unpaid judgment against the plaintiff shown to have resulted from his attorney's unauthorized act was evidence of actual damages even though it remained unpaid at the time of trial").

In this case, the Trustee has pleaded that the Lawyer Defendants' negligence led to the entry of the $17 million default judgment against CMGT.  Under *Gruse*, the default judgment against CMGT constitutes actual damages.  Accordingly, the Lawyer Defendants' Motion to Dismiss Count II for lack of damages is denied.

**IV.     The Lawyer Defendants' Attacks on Certain of the Acts of Malpractice Alleged in the Complaint.**

In addition to their general arguments that this action should be dismissed: (1) as a fraud on the judicial system; (2) because the Trustee proximately caused CMGT's damages as alleged in Count II; and (3) because there are no damages with respect to Count II, the Lawyer Defendants also specifically attack certain of the acts or omissions pleaded in the complaint as instances of malpractice.  With respect to each act or omission, the Lawyer Defendants argue that (1) the Lawyer Defendants had no duty to perform those acts or omissions; (2) the acts or omissions are contradicted by the exhibits to the Complaint; and/or (3) those acts or omissions did not damage CMGT.  As set forth below, most of these arguments fail.  However, the Court agrees with the Lawyer Defendants that the Trustee may not recover for the alleged failure, on the part of the Lawyer Defendants, to: (1) advise CMGT that Spehar would sue; and (2) to provide legal advice to CMGT's shareholders.

12

A.     The Language of the Agreement Does Not Suffice to Establish that the Lawyer Defendants Did Not Owe CMGT a Duty of Care with Respect to the Dispute with <u>Spehar.</u>

The Lawyer Defendants argue that because the Agreement provides that CMGT retained the Lawyer Defendants "only in connection with [CMGT's] formation and corporate activities" and the Agreement "says nothing about litigation services," there was no attorney-client relationship between the Lawyer Defendants and CMGT with respect to the Spehar dispute and the Lawyer Defendants therefore did not owe CMGT a duty of care with respect to certain of the acts of malpractice alleged in the complaint – including: (1) failing to advise that Spehar would sue; (2) failing to advise that CMGT could lose the Spehar suit; (3) failing to advise that the Lawyer Defendants would not represent CMGT in the Spehar suit; (4) failing to advise that the Spehar suit would preclude financing; and (5) failing to recommend that CMGT settle the Spehar suit.  Citing *Morris v. Margulis*, 307 Ill. App. 3d 1024 (Ill. App. Ct. 1999) for the proposition that an attorney-client relationship is generally found whenever a client consults an attorney for the evident purpose of securing legal advice, the Trustee argues that an attorney-client relationship arose between the Lawyer Defendants and CMGT – notwithstanding any limitations on the scope of the representation expressed in the Agreement – when Given provided CMGT with advice about the Spehar dispute.

In this case, the Trustee has alleged that the Lawyer Defendants advised CMGT as to the appropriate course of action with respect to the burgeoning dispute between CMGT and Spehar, and further advised CMGT as to the legal consequences of and potential strategy for handling the California Lawsuit, in the midst of and intertwined with advice concerning corporate financing for, and the initial capitalization of, CMGT.  While the Lawyer Defendants advised CMGT via email after the California Lawsuit had been filed that, with respect to that lawsuit, they "[did] not represent

13

CMGT and [did] not expect to," the Complaint alleges that the Lawyer Defendants nevertheless provided legal advice regarding that lawsuit both before and after sending that email to CMGT. Indeed, Exhibit 16 to the Complaint is an email from Given to Franco and others providing an assessment of the Spehar litigation and the "Purported Spehar TRO." That email instructs the recipients to "[f]eel free to contact [Franco] or me with any questions . . . you might have regarding the current situation." (Cplt., Exh. 16 thereto). That the Lawyer Defendants advised CMGT with respect to the dispute with Spehar – even though the Agreement purports to limit the scope of their representation of CMGT – suggests that an attorney-client relationship arose between the Lawyer Defendants and CMGT with respect to the Spehar dispute and a concomitant duty of care on the part of the Lawyer Defendants.

      B.    The Lawyer Defendants Have Failed to Demonstrate that Certain Alleged Instances of Malpractice are Contradicted by the Complaint and its Exhibits or are Otherwise <u>Not Actionable.</u>

The Lawyer Defendants argue that certain instances of malpractice alleged in the complaint are contradicted by the Complaint and/or the exhibits thereto or that those instances of malpractice did not cause any damage to CMGT. With respect to the following alleged instances of malpractice, the Lawyer Defendants have failed to demonstrate that the alleged acts or omissions are contradicted by the Complaint and its exhibits or are otherwise not actionable.

      *1.    Failure to advise that CMGT could lose the Spehar suit.*

The Lawyer Defendants argue that Exhibit 16 to the Complaint contradicts the allegation that they failed to advise CMGT that it could lose the Spehar suit. Exhibit 16 does not completely contradict that allegation. Indeed, Exhibit 16 characterizes Spehar's claims as "absolutely spurious" and suggests that it is "obvious that there is no jurisdictional basis for Gary [sic] Spehar to bring his

lawsuit in Los Angeles when CMGT is a Delaware corporation operating from Illinois." While Exhibit 16 does advise that "CMGT has no money to fight this battle," that is not the same as advising CMGT that it could *lose* the Spehar suit. Accordingly, the Lawyer Defendants' Motion to Dismiss both counts of the Complaint to the extent that either count is based upon a failure to advise that CMGT could lose the Spehar suit is denied.

2.    *Failure to advise that the Lawyer Defendants would not represent CMGT.*

The Lawyer Defendants argue that Exhibit 15 to the Complaint, a September 17 e-mail to CMGT's chief operating officer and its shareholders, contradicts the allegation that they failed to advise that they would not represent CMGT in connection with the California Lawsuit. Exhibit 15 states that "Mayer Brown has not been retained to deal with [the Spehar suit], and we do not expect to be." But two days later, Given sent another email addressing the merits of the California Lawsuit and offering advice to CMGT and its shareholders with respect to that suit. (Cplt., Exh. 16 thereto) (advising on the California Lawsuit and instructing recipients to "[f]eel free to contact [Franco] or me with any questions . . . you might have regarding the [California Lawsuit]"). The Lawyer Defendants have not identified any exhibit to the Complaint that advises that they would not represent CMGT subsequent to instructing CMGT that it should contact the Lawyer Defendants for advice on the Spehar suit. Accordingly, the Lawyer Defendants' Motion to Dismiss both counts of the Complaint to the extent that either count is based upon a failure to advise that the Lawyer Defendants would not represent CMGT is denied.

3.    *Failure to advise that the Spehar suit would preclude financing.*

The Lawyer defendants again point to Exhibit 16 to the complaint and argue that they did advise CMGT that "no one should expect [the investors in the Newco Deal] or any other third-party

15

to go forward [with financing] in the face of [Spehar's] despicable tactics." (Mem. in Support of Mtn. to Dismiss at p. 14). The Lawyer Defendants argue that Exhibit 16 thus "provided the very warnings the Complaint says were missing." But the Complaint alleges that the Lawyer Defendants failed to advise CMGT – before Spehar filed suit – that "a very probable consequence of a lawsuit by SC, regardless of its merit, would be that CMGT would not receive funding from any source." (Cplt. ¶ 69(d)). The Court understands the Complaint to allege that the Lawyer Defendants were negligent in their failure to warn CMGT that it should take some action to resolve the dispute with Spehar *before* that dispute developed into litigation. Exhibit 16 cannot therefore be understood to provide the warnings the Complaint alleges were missing because Exhibit 16 did not precede the filing of the Spehar suit. Accordingly, the Lawyer Defendants' Motion to Dismiss both counts of the Complaint to the extent that either count is based upon a failure to advise that the Spehar suit would preclude financing is denied.

### 4.    *Telling CMGT not to defend the Spehar suit.*

The Lawyer Defendants argue that certain of the exhibits to the Complaint are "inconsistent with [the allegation that they told] CMGT not to defend the Spehar suit." (Mem. in Support of Mtn. to Dismiss at p. 15). However, they do not point to any exhibit to the Complaint that would establish conclusively that the Lawyer Defendants never advised CMGT not to defend the Spehar suit. Accordingly, the Lawyer Defendants' Motion to Dismiss both counts of the Complaint to the extent that either count is based upon the allegation that the Lawyer Defendants advised CMGT not to defend the Spehar suit is denied.

> 5.    *Failing to recommend that CMGT settle the Spehar dispute.*

The Lawyer Defendants argue that the complaint and its exhibits allow for only three conclusions: (a) the Lawyer Defendants did advise CMGT to settle; (b) CMGT already knew it should settle; or (c) advising CMGT to settle would have been futile because settlement was impossible.  In order to arrive at those conclusions, the Lawyer Defendants ignore Paragraph 54 of the Complaint, which alleges that Spehar attempted to settle the dispute, but the Lawyer Defendants were not receptive to Spehar's efforts in that regard.  The Complaint goes on to allege that Franco advised CMGT's shareholders that management and legal counsel had "numerous conversations" with Spehar "on this topic" but that those conversations "were not productive."  These allegations do not foreclose the possibility that the evidence could indicate that those conversations were not productive because the Lawyer Defendants failed to recommend settling – or affirmatively recommended that CMGT *not* settle the dispute.  Accordingly, the Lawyer Defendants' Motion to Dismiss both counts of the Complaint to the extent that either count is based upon a failure to advise that CMGT settle the Spehar dispute is denied.

> 6.    *Failure to suggest that CMGT search for better financing offers and failure to advise that MBRM favored the Newco deal because it ensured payment of MBRM's fees.*

The Lawyer Defendants argue that even if they had a duty to advise CMGT to seek a better business deal, the Complaint alleges only an error of judgment and not a failure to exercise a reasonable degree of care and skill.  But the Complaint alleges that MBRM favored the Newco deal because it ensured payment of MBRM's fees and further alleges that MBRM rejected another potential source of funding that may have been better for CMGT because that deal would not have resulted in payment of MBRM's fees.  In other words, the Complaint alleges that the Lawyer

Defendants placed their own interests ahead of CMGT's interests. The Complaint thus alleges malpractice resulting from a conflict of interest and not a simple error of judgment. Accordingly, the Lawyer Defendants' Motion to Dismiss both counts of the Complaint to the extent that either count is based upon either a failure to suggest that CMGT search for better financing offers or upon MBRM placing its own interests ahead of CMGT's interests is denied.

      C.    CMGT May Not Recover for the Alleged Failure to Advise that Spehar Would Sue or for the Alleged Failure to Provide Advice to CMGT's Shareholders.

*1. Failure to advise that Spehar would sue.*

The Lawyer Defendants argue that the Trustee cannot recover for their alleged failure to advise CMGT that Spehar would sue because CMGT was otherwise aware that Spehar would sue before it did so. The Court agrees. The Complaint and the exhibits thereto establish that CMGT was aware that there was a high risk that Spehar would file suit. (Cplt. ¶ 57 and Exh. 14 thereto). As such, the Trustee cannot establish that but for the allegedly negligent failure to advise CMGT that Spehar would sue, CMGT would not have been damaged. Accordingly, to the extent that either of the counts in the Complaint is based upon a failure to advise CMGT that Spehar would sue, the Motion to Dismiss is granted and the Trustee may not recover for that specific allegation of malpractice.

*2.    Failure to advise CMGT's Shareholders.*

The Lawyer Defendants argue that they cannot be liable for any failure to offer advice to CMGT's shareholders because they owed no duty to CMGT's shareholders. The Court agrees. Attorneys representing a corporate entity owe a duty to the entity and not to its shareholders. *Felty v. Hartweg*, 169 Ill. App. 3d 406, 408 (Ill. App. Ct. 1988) ("A shareholder in an ordinary corporation

does not thereby become a beneficiary of an attorney-client relationship between a lawyer and the corporation in which he owns shares. The lawyer for the corporation does not, thereby, owe a fiduciary duty to the shareholder."). Absent some allegation that the Lawyer Defendants owed CMGT's shareholders a duty of care arising out of circumstances other than their representation of CMGT, the Lawyer Defendants did not owe CMGT's shareholders a duty of care. Accordingly, the Lawyer Defendants' Motion to Dismiss both counts of the Complaint to the extent that either count is based upon a failure to provide advice to CMGT's shareholders is granted and the Trustee may not recover for that specific allegation of malpractice.

### Conclusion

For the reasons stated herein, the Lawyer Defendants' Motion to Dismiss is granted in part and denied in part.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:  June 28, 2007

19