# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DAVID GROCHOCINSKI, not individually but solely in his capacity as the Chapter 7 Trustee for the bankruptcy estate of CMGT, INC., )<br>)<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MAYER BROWN ROWE & MAW LLP and )<br>RONALD B. GIVEN )<br>)<br>Defendants. ) | No. 06 C 5486<br><br>Judge Virginia M. Kendall |

## DEFENDANTS' MOTION TO RECONSIDER AND/OR FOR OTHER RELIEF

Stephen Novack
Mitchell L. Marinello
Steven J. Ciszewski
Novack and Macey LLP
100 N. Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Doc# 183513

Defendants Mayer Brown Rowe & Maw LLP and Ronald B. Given (together, "Defendants"), by their attorneys, Novack and Macey LLP, respectfully request that the Court reconsider certain aspects of its June 28, 2007 Memorandum Opinion and Order ("Opinion" or "Op. at ___") granting in part and denying in part Defendants' Motion to Dismiss. In the alternative, Defendants request that the Court certify one controlling issue of law for interlocutory review pursuant to 28 U.S.C. §1292(b). Finally, Defendants request an extension of time for further pleadings until further order of the Court.[1]

## I.

## **MOTION TO RECONSIDER**

Defendants do not lightly seek to reconsider any order of this Honorable Court. However, Defendants respectfully believe that the Opinion is premised on substantial misapprehensions of the facts of this case and the law governing it. These errors should be corrected to avoid protracted and unnecessary proceedings.

### A. **Spehar Is The Real Party In Interest In This Case**

It appears that the Opinion has overlooked a critical fact -- that the party that stands to recover the lion's share of any recovery by the Trustee is Spehar. For example, if the Trustee obtains a $17 million judgment then, after the payment of attorneys' fees, Spehar would receive over 90% of that judgment. (See Ex. D to Motion to Dismiss.) But, if the allegations of the Complaint are correct, that result would be bizarre. After all, Spehar is the very party that caused CMGT's downfall by: (1) asserting a meritless claim in the first place; (2) obtaining a "default" TRO preventing CMGT's financing; and (3) obtaining the $17 million Default Judgment -- all based upon

---

[1] Capitalized terms not defined herein have the same meaning ascribed to them in the Opinion.

a phony damages claim that even this Court itself recognized was speculative (Op. at 3, n.1). Indeed, as the Trustee and this Court both acknowledge, the only way that the Trustee's malpractice claim can prevail against Defendants is to show that, if defended by CMGT, Spehar's meritless claims would have failed. (See Op. at 5.) Yet, despite all of that, if the Trustee has his way, Spehar would receive "damages" for Defendants' alleged failure to address Spehar's own meritless claims in court. This ironic and unjust result -- that a party with an admittedly meritless and uncollectible claim against CMGT can collect on that very same meritless and uncollectible claim from CMGT's attorneys -- would not be permitted to stand.

It should make no difference that the case is technically being prosecuted by the Trustee. Because CMGT was bankrupt with no assets, Spehar had no way to get anything out of the Default Judgment until the Trustee: (1) deliberately or through inadvertence made no effort to vacate the Default Judgment -- even though the Judge who entered the Default Judgment as much as invited such a motion (see Ex. B to Motion to Dismiss at pp. 5, 7); and (2) instead, decided to partner with Spehar to pursue this case. The Trustee is knowingly prosecuting a case that, if successful, would result in Spehar receiving a multi-million dollar windfall, all because Spehar dreamed-up and filed an admittedly meritless case against CMGT. This is nothing if not an improper result that would not be possible without the Trustee's complicity. In all respects, the real party in interest is Spehar, who created the damages, is financing this case and would be the largest beneficiary of any recovery.

### B.  Count II Does Not Adequately Plead Damages

The only element of damages alleged in Count II is the Default Judgment. Yet, it is undisputed that CMGT: (1) has not paid one penny of the Default Judgment; and (2) will not pay one penny of the Default Judgment because it has filed for bankruptcy. Binding Illinois Supreme Court

precedent, however, holds that the plaintiff in an attorney malpractice case must plead and prove actual damages in the form of "a monetary loss." Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd., 837 N.E.2d 99 (Ill. 2005). Northern Illinois elaborates as follows:

> In a legal malpractice action, actual damages are never presumed. Such damages must be affirmatively established by the aggrieved client. Unless the client can demonstrate that he has sustained a monetary loss as the result of some negligent act on the lawyer's part, his cause of action cannot succeed.

Id. at 107 (emphasis added). Here, because CMGT has not suffered -- and never will suffer -- a monetary loss as a result of the Default Judgment, Count II does not adequately plead damages.

With all due respect, Defendants believe that the Court's reliance upon Gruse v. Belline, 486 N.E.2d 398 (Ill. App. Ct. 1985) (citing Montfort v. Jeter, 567 S.W.2d 498 (Tex. 1978)), is misplaced. Gruse does not apply where, as here, the underlying judgment will never be paid. To hold otherwise would put Gruse in conflict with the Illinois Supreme Court's decision in Northern Illinois. At most, Gruse stands for the limited proposition that an unpaid judgment can be proof of damages "absent any evidence to the contrary." Id. at 404. Here, the "evidence to the contrary" not only exists, but it is conclusive, uncontestable and involves no issue of fact to be tried: CMGT has not suffered and never will suffer a monetary loss, because it did not pay one penny of the Default Judgment before entering bankruptcy and now, because of its Chapter 7 bankruptcy, no longer exists and never will pay one penny of the Default Judgment. This situation is completely different from that in Gruse where the client was an individual who had not filed for bankruptcy and was responsible for paying the judgment in question.[2]

---

[2] Likewise, Montfort does not stand for the proposition that a judgment that will never be paid can be damages. To the contrary, the judgment creditor in Monfort served upon the client interrogatories in aid of judgment to assist with collection of the judgment. Thus, although the

The present situation is most like Sterling Radio Stations, Inc. v. Weinstine, 765 N.E.2d 56 (Ill. App. Ct. 2002). In Sterling, a $778,460.38 judgment for joint and several liability was entered against the client and Sterling Radio. Through a settlement payment, Sterling Radio satisfied the entire judgment. Because of this, the client never did, and never would have to, pay one penny of the judgment against him. Nevertheless, the client sued his lawyer for malpractice. The Illinois Appellate Court rejected this claim, finding that the client's "measure of damages is zero" because he did not and never would have to pay any portion of the judgment. The exact same rationale applies here. Because CMGT did not and will never have to pay one penny of the Default Judgment, its measure of damages is zero.

In its Opinion, this Court rejects Defendants' reading of Sterling based upon a quotation from Northern Illinois, and concludes therefrom that Sterling does not address the issue of whether an unsatisfied judgment can constitute damages. (Op. at 11.) Respectfully, this Court's reliance on that quotation is in error because the language that the Court quoted is not part of the Supreme Court's decision, but rather is its summary of the Appellate Court decision that was under review -- and that the Supreme Court went on to reverse. Thus, nothing in Northern Illinois should be read to adopt or sanction the reasoning of the reversed Appellate Court decision. Indeed, the Appellate Court's reasoning was itself flawed. As far as the client is concerned, it makes no difference whether someone else pays the judgment or, for whatever other reason (including bankruptcy), the client never will pay it. Either way, the client pays nothing and has no damages. Thus, as set forth above,

---

judgment had not yet been paid by the client in Montfort, the evidence of record demonstrated that collection efforts were under way.

the only conclusion that is consistent with <u>Northern Illinois</u> is that the Default Judgment does not constitute damages because CMGT has not paid it and never will.

## II.

## **ALTERNATIVE MOTION FOR CERTIFICATION UNDER 28 U.S.C. §1292(b)**

In the event that the Court is unwilling to reconsider its Opinion on Count II as set forth in Section I.B above, Defendants respectfully request in the alternative that it certify for interlocutory review the question of whether or not Count II adequately pleads damages. Specifically, Defendants request certification of the following question of law (the "Issue"):

> Can a monetary judgment -- on which no payment has been made and as to which no payment ever will be made -- constitute actual monetary damages in a legal malpractice action under Illinois law?

In relevant part, 28 U.S.C. §1292(b) states as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

To be certified under § 1292(b) an issue must be: (a) a question of law; (b) controlling; (c) contestable; and (d) its resolution must speed up the litigation. <u>Ahrenholz v. Bd. of Trs. of the Univ. of Illinois</u>, 219 F.3d 674, 675 (7th Cir. 2000). Further, the petition for certification must be filed within a reasonable time. <u>Id.</u>

Here, all of the requirements of §1292(b) are met. <u>First</u>, there can be no doubt that the Issue is a question of law. In <u>Ahrenholz</u>, the Seventh Circuit held that a question of law is "something the court of appeals could decide quickly and cleanly without having to study the record." <u>Id.</u> at 677.

The Issue is exactly that and would require the Seventh Circuit to consider only limited Illinois precedent and the <u>undisputed</u> fact that the Default Judgment has not been paid and never will be.

<u>Second</u>, the Issue is undoubtedly controlling. An issue is controlling "if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." <u>United States v. Moglia</u>, No. 02 C. 6131, 2004 WL 1254128, at *3 (N.D. Ill. June 7, 2004) (quoting <u>Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assoc., Inc.</u>, 86 F.3d 656, 659 (7th Cir. 1996)). If Defendants are correct, Count II fails as a matter of law. Therefore, even if Count I remains, it is limited to events before the California Action was filed. Thus, dismissal of Count II would significantly reduce the theories of liability in this case and the scope and length of discovery. In short, the Issue is "serious to the conduct of the litigation, either practically or legally." <u>Johnson v. Burken</u>, 930 F.2d 1202, 1206 (7th Cir. 1991).

<u>Third</u>, although Defendants' believe their interpretation of Illinois law is correct, the Opinion suggests that there is a substantial ground for difference of opinion as to how <u>Northern Illinois</u>, <u>Sterling</u> and <u>Gruse</u> apply to a situation where a default judgment will never be paid. Indeed, one way that an issue is contestable is "if there are substantial conflicting decisions regarding" the issue. <u>Moglia</u>, 2004 WL 1254128, at *3. Here, the Court's Opinion indicates that <u>Sterling</u> and <u>Gruse</u> are conflicting and that the Illinois Supreme Court failed to provide any guidance regarding the Issue in <u>Northern Illinois</u>.

<u>Fourth</u>, an immediate appeal may materially advance the termination of this litigation -- speed it up, in the Seventh Circuit's terms. As noted above, dismissal of Count II would at the very least narrow both the legal and factual scope of the case. <u>EEOC v. Sidley Austin Brown & Wood LLP</u>, 406 F. Supp. 2d 991, 997-98 (N.D. Ill. 2005) (reduction in trial complexity satisfied speed

requirement). Dismissal of Count II would also materially shorten the length of trial, as the "case within the case" concerning the California Action would not have to be tried. Id.

Finally, Defendants seek this relief in timely fashion. The Court entered its ruling on June 28, 2007. Defendants filed this Motion ten business days later, a time period which is clearly reasonable.

Accordingly, if the Court does not reverse itself as to the damages issue in Count II (as it should), then Defendants respectfully request in the alternative that it certify the Issue under 28 U.S.C. §1292(b).

## III.

## MOTION FOR EXTENSION OF TIME

It is unclear from the Opinion whether the Trustee is required to amend the Complaint to conform to the portion of the Opinion that granted Defendants' Motion to Dismiss in part. If not, then, pursuant to Fed. R. Civ. P. 12(a)(4)(A), Defendants' answer to the Complaint would be due ten (10) days after June 28, 2007, the date on which notice of the Court's denial in part of Defendants' Motion to Dismiss was provided. In light of the foregoing alternative motions, Defendants respectfully request that the Court order that no amended complaint or answer need be filed until further order of the Court -- either by resolution of the foregoing motions or otherwise.

> Respectfully submitted,
>
> MAYER BROWN ROWE & MAW LLP AND
> RONALD GIVEN
>
> _____/s/ Stephen Novack_____