## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DISTRICT

| | |
|---|---|
| DAVID GROCHOCINSKI, not individually, but solely in his capacity as the Chapter 7 Trustee for the bankruptcy estate of CMGT, INC.<br>   Plaintiff,<br><br>v.<br><br>MAYER BROWN ROWE & MAW LLP, RONALD B. GIVEN, and CHARLES W. TRAUTNER,<br><br>   Defendants. | No. 06 C 5486<br><br>Judge Virginia M. Kendall |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER AND/OR FOR OTHER RELIEF

### I. INTRODUCTION

Defendants' motion to reconsider and/or for other relief (the "Motion") argues that this Court made a critical mistake by overlooking the fact that Spehar is the "true party in interest."[1] According to defendants, if the Court had not made this mistake, it would have dismissed plaintiff's (the "Trustee's") entire complaint because this case is a fraud on the judicial system. Defendants ignore, however, that the most critical element of their so-called fraud defense is whether the Trustee filed *this* case with a good-faith belief that the legal malpractice claims against defendants are meritorious. If the Trustee is not a participant in the purported fraud, and if he filed this case with a good-faith belief that the malpractice claims are meritorious, then this case cannot be a fraud. Accordingly, defendants' assertion that they need not prove that the Trustee is a participant in a purported fraud by Spehar should be summarily rejected and defendants' Motion should be denied.

---

[1] All capitalized terms not defined herein have the same meaning as proscribed in Plaintiff's Response to Defendants' Motion to Dismiss.

Defendants also argue that this Court failed to understand that, under Illinois law, when evidence has been presented that an unsatisfied judgment will never be paid, the existence of the judgment in and of itself does not constitute actual damages. According to defendants, it is "undisputed" that the $17 million default judgment against CMGT will never be paid. As explained in the Argument section of this brief, the Trustee disagrees with defendants' analysis of Illinois law. Nevertheless, this Court can deny defendants' Motion without even reading that legal argument, because it is *not* an undisputed fact that the $17 million default judgment will never be paid. Defendants overlook the obvious fact that if the Trustee prevails on Count I of his complaint (which seeks damages separate and independent of the $17 million default judgment) then at least some of the default judgment will be paid. On that basis alone, defendants' Motion should be denied.

II.   **ARGUMENT I: Defendants' Motion to Reconsider Should be Denied**

   A.   **Applicable Legal Standard for a Motion to Reconsider**

Defendants improperly fail to identify the applicable legal standard for their Motion. *See Neal v. Honeywell*, No. 93 C 1143, 1996 WL 627616 at *1 (N.D. Ill. Oct. 25, 1996) ("The grounds for a motion and the applicable legal standard should be cited in the motion itself"). While there is no Federal Rule of Civil Procedure that allows the filing of a motion to reconsider an interlocutory order that does not adjudicate a claim for relief, district courts have recognized such motions. *United States Sec. and Exch. Comm'n v. Nat'l Presto Indus. Inc.*, No. 02 C 5027, 2004 WL 1093390 at * 1 (N.D. Ill. April 28, 2004.) However, this type of motion to reconsider is appropriate only where: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issue presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or

significant change in the law since submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court. *Hamilton v. O'Connor Chevrolet, Inc.*, No. 02 C 1897, 2005 WL 1189589 at *3 (N.D. Ill. March 23, 2005). "These grounds represent extraordinary circumstances, and [a motion to reconsider] is to be granted only in such extraordinary circumstances." *Nat'l Presto Indus., Inc.*, at 2004 WL 1093390, at *2. Thus, "as a rule, courts should be loathe to grant a motion to reconsider an interlocutory order and should do so only where the initial decision was clearly erroneous and would work a manifest injustice." *Id.* at *1.

Here, defendants argue that the Court's Memorandum Opinion and Order (the "Opinion") is "premised on substantial misapprehensions of the facts of this case and the law governing it." (Mot. at pg. 1.) The Trustee infers from this conclusory statement that defendants are relying on the third basis (listed above) for a motion to reconsider. Defendants further argue that the Court committed errors of misapprehension when it failed to understand: (1) that Spehar is the "real party in interest;" and (2) that when there is evidence that an unsatisfied judgment will never be paid, the existence of the judgment in and of itself does not constitute actual damages. As explained below, defendants' Motion should be denied.

      **B. This Court Correctly Ruled that Defendants Must Present Clear and Convincing Evidence that the Trustee Engaged in a Fraud on the Judicial System**

Before addressing the substance of defendants' arguments, let us be clear about what defendants' fraud theory is and how they contend they have proved that theory. In sum, defendants' fraud theory is that: (1) while SC was trying to obtain funding for CMGT, SC "dreamed-up" a meritless dispute with CMGT so that SC could file an equally meritless lawsuit against CMGT in California; (2) at the time SC engaged in this purported scheme, it knew that

3

CMGT would never defend the lawsuit and that SC would, therefore, be able to obtain a default judgment against CMGT for millions of dollars of "phony" damages; and, (3) then, knowing that CMGT would not be able to pay the default judgment, SC planned to (and did) cause CMGT to enter into an involuntary bankruptcy proceeding so that SC could convince whoever happened to become the bankruptcy trustee to file a baseless lawsuit against defendants so that SC could recover on its default judgment.

In support of this elaborate (and implausible) fraud theory, defendants fail to present *any* evidence that: SC believed its California lawsuit against CMGT was meritless; SC pled false allegations in the SC lawsuit; SC took some fraudulent action to prevent CMGT from defending itself in the SC Lawsuit; SC lied to the California Court at the hearing in which SC proved-up its damages; SC took some fraudulent action to prevent CMGT from defending itself at the default prove-up hearing; SC lied to or improperly colluded with the Trustee to induce the Trustee to file this case; the Trustee believes that the legal malpractice claims against defendants are meritless; or that the Trustee lied to the bankruptcy court and/or this Court.

Despite the absence of any such evidence, defendants argue that they have established fraud by clear and convincing evidence because:

- SC obtained a default judgment against CMGT. This statement is true, but it is not evidence of fraud.

- Spehar and the Trustee entered into an agreement whereby Spehar is paying litigation costs and will receive a portion of the litigation proceeds. This statement is true, but it is not evidence of fraud. Indeed, the bankruptcy court approved that agreement.

- The complaint in this case alleges that the SC lawsuit was meritless. The complaint contains no such allegation.[2]

- Spehar is the "true party in interest" here because he will receive the "lion's share" of the recovery. It is true that Spehar will receive a portion of the recovery, but he will do so only with the bankruptcy court's approval. That being said, the term "true party in interest" has no relevant meaning here. Every creditor in every Chapter 7 bankruptcy proceeding has an interest in claims brought by the bankruptcy trustee. Thus, there is nothing unusual about Spehar's interest in this case. Moreover, it is not at all unusual for a creditor, such as Spehar, to advance litigation costs for a bankrupt estate that has little or no assets. Defendants' argument that Spehar is the "true party in interest" is nothing more than a red-herring. The critical element to defendants' fraud theory is not whether Spehar has a financial interest in this case – it is whether the Trustee knowingly filed meritless or untrue claims. Spehar's purported status as a "true party in interest" does not change the fact that this Court reviewed the complaint and the exhibits attached to the complaint and concluded that the Trustee stated several legitimate malpractice claims against defendants. Thus, absent evidence that the Trustee knowingly pled false allegations in the complaint, this case cannot be a fraud.

---

[2] The complaint alleges that but for defendants' negligence, CMGT would have defeated SC's lawsuit on procedural grounds, such as lack of jurisdiction or the inappropriatness of injunctive relief, such that SC would not have been proceeded with its amended complaint for damages. (*See e.g.*, Comp. at ¶¶ 64 and 75; Resp. to Mot. to Dismiss at pp. 21-22.) Thus, even if Spehar is considered a "party" in this case, he has not admitted that the SC lawsuit was meritless.

- And, because the "true party in interest" (Spehar) has admitted that his California lawsuit against CMGT was meritless, Spehar is engaging in a fraud upon this Court. As explained above, every component of this conclusion is wrong.

In its Opinion, this Court rejected defendants' argument and correctly held that, "[i]t would be inappropriate to levy so harsh a sanction as dismissal upon the Trustee absent clear and convincing evidence that the Trustee – and not just Spehar – orchestrated a fraud on the judicial system. At this point, the only evidence before this Court is a copy of the facially valid default judgment entered by the California Court." (Op. at pg. 7.) In their motion to reconsider, defendants argue that this finding by the Court is clearly erroneous because the Court "overlooked" the fact that Spehar is the "true party in interest" in this case. Defendants' argument fails for at least four reasons.

First, even if Spehar is the or a "true party in interest" and the Court overlooked this "fact," this Court was nevertheless correct when it found that defendants must present clear and convincing evidence that the Trustee is participating in Spehar's purported fraud. It is undisputed that the Trustee is the only person who had the authority to decide whether to file *this case*. Regardless of whether Spehar committed a fraud when he filed the SC lawsuit (he did not), and regardless of whether Spehar has implicitly admitted that fraud by virtue of his financial interest in this case (he has not), *this case* cannot be a fraud unless (a) Spehar lied to the Trustee to induce him to file this case (which has never been argued much less proved by defendants), or (b) the Trustee filed this case even though he believed that the claims against defendants are meritless. Stated another way, if the Trustee decided to file this case because he believes that the claims against defendants are meritorious (which he did), then this case cannot be a fraud. Because the Trustee's participation in the purported fraud is a necessary element of

6

defendants' fraud defense, the Court's finding that defendants must present clear and convincing evidence that the Trustee – and not just Spehar – engaged in a fraud on the judicial system is not clearly erroneous.

Second, even if the Trustee's participation in the purported fraud is not a necessary element of defendants' fraud defense, defendants' Motion should nevertheless be denied because defendants have not presented clear and convincing evidence that Spehar (or anyone else) committed a fraud on this or any other court. According to defendants, the starting point in the purported fraud was Spehar filing a California lawsuit that Spehar knew was meritless. Thus, defendants must establish that Spehar did not believe his own claim had merit. Defendants have not met this burden, because their only "evidence" is (a) Spehar's financial interest in this case, and (b) defendants' own mischaracterization of the Trustee's complaint – i.e., defendants' erroneous claim that the complaint admits that Spehar's claim was meritless (*See* Fn. 2 *supra*.) None of this "evidence" supports defendants' fraud defense. Indeed, the e-mails attached to the Trustee's complaint demonstrate that Spehar firmly believed in the merits of his claim against CMGT. (*See e.g.*, Comp. at Exs. 8, 10 and 12).

Third, in its Opinion, the Court correctly noted that the only case cited by defendants in support of their fraud defense involved a situation where an actual party to the case had committed a fraud on the court. (Op. at pg. 6). In their motion to reconsider, defendants fail to cite any cases in which the sanction of dismissal with prejudice was levied on a party because a non-party with a financial interest in the case committed a fraud on the court. Thus, defendants' Motion should be denied.

Fourth, assuming arguendo that this Court concludes that the Trustee's participation in the purported fraud is not a necessary element of the fraud, and that defendants have presented

7

clear and convincing evidence that Spehar orchestrated a fraud on the judicial system, defendants' argument that the entire case should be dismissed should still be rejected. Defendants ignore the fact that even if they could prove their fraud theory (which they cannot), that would only establish that Count II of the complaint is a fraud.[3] In their motion to dismiss and again in the motion to reconsider, defendants ignore the important distinctions between Counts I and II of the complaint.  Count I of the complaint alleges that: (1) defendants negligently handled the SC dispute (as opposed to the SC lawsuit) which, regardless of the merit of the dispute, exposed CMGT to a litigation risk that it could not afford (*See* Comp. at ¶¶ 66-71; Resp. to Mot. to Dismiss at pp. 7-10 and 12-21), and (2) defendants recommended the revived Trautner proposal without disclosing their conflict of interest (*Id.*)  Count II alleges that defendants negligently advised CMGT about how to handle the SC lawsuit. (*See* Comp. at ¶¶ 72-77; Resp. to Mot. to Dismiss at pp. 10-11 and 21-25.)  As explained in the Trustee's brief in response to defendant's motion to dismiss, the merits of the SC dispute and SC lawsuit *are not* relevant to Count I of the Trustee's complaint. (*See e.g.*, Resp. to Mot. to Dismiss at pg. 16, Fn. 5.)  Because the merits of the SC dispute and the SC lawsuit have no bearing on the validity of Count I of the complaint, defendant's fraud theory cannot logically apply to Count I of the complaint.  Thus, even if defendants' unsupported and far-fetched fraud theory is correct (it is not), that would at most result in the dismissal of Count II – not the entire case.

      Finally, the arguments made in defendants' motion to reconsider were also made in their motion to dismiss and/or their reply in support of their motion to dismiss. (*Compare* Mot. to Dismiss at pg. 7 *and* Reply at pp. 1-3 *with* Mot. to Reconsider at pp. 1-2.)  Defendants are improperly using a motion to reconsider as means of rehashing their original arguments in the

---

[3]     The very idea that either count of the complaint is a fraud is absurd. The exhibits to the complaint directly support the malpractice allegations.

8

hope that the Court will revisit its prior decision and change its reasoning. This is an improper use of a motion to reconsider. *Nat'l Presto Indus., Inc.*, 2004 WL 1093390 at *2 ("Motions to reconsider are not at the disposal of parties who want to 'rehash' the same arguments that were originally presented to the court. Indeed, the court's orders are not 'mere first drafts, subject to revision and reconsideration at a litigant's pleasure.'")  Thus, defendants' motion to reconsider should be denied.

### C. This Court did Not Commit an Error of Apprehension When it Held that Plaintiff Adequately Pleaded Damages with Respect to Count II.

Defendants argue that the Court misapprehended the law when it ruled that the $17 million default judgment against CMGT constitutes actual damages. When the Court made this finding, it relied on *Gruse v. Belline* for its holding that an unpaid judgment constitutes actual damages. (Op. at pp. 11-12.) Defendants argue that this reliance was misplaced, focusing their argument on the statement in *Gruse* that unsatisfied judgments can constitute actual damages "absent evidence to the contrary." Defendants interpret the phrase – "absent evidence to the contrary" – to mean evidence that the judgment will never be collected. Defendants' interpretation should be rejected because the court in *Gruse* did not explain what it meant by the phrase "absent evidence to the contrary," and defendants have not cited any authority to support their interpretation. Additionally, defendants' interpretation should be rejected because it is not consistent with the plain and literal interpretation of the phrase "absent evidence to the contrary." The word "contrary" means the opposite of or completely different than. (*See* BLACK'S LAW DICTIONARY 228 (6th ed. 1999).) The opposite of the existence of a valid judgment is the existence of an invalid judgment or no judgment at all. Thus, for example, evidence to the contrary could be evidence that the judgments were fraudulently obtained or were themselves a fraud. On the other hand, evidence that a valid unpaid judgment will never be paid is not

9

contrary to -- i.e. the opposite of -- the existence of a valid unpaid judgment. If the court in *Gruse* had meant evidence of uncollectability, it could have easily said "absent evidence that the judgment will never be paid." But, this is not what the court said. Because defendants' interpretation of the phrase "absent evidence to the contrary" is not consistent with the plain and literal meaning of that phrase, it should be rejected.

Moreover, even if defendants' interpretation is accepted, defendants incorrectly and improperly assume that the $17 million default judgment will *never* be paid under any circumstances whatsoever. This argument asks the Court to make assumptions about facts that may not even be known to the parties or the Court at this time. For example, the damage sought in Count I is the lost value of CMGT. This damage is independent of the $17 million sought in Count II. If the Trustee wins Count I, some or all of the $17 million default judgment will be paid. This is just one foreseeable example of how the $17 million default judgment might be paid. There may be other ways in which the judgment could be paid that are not yet foreseeable. When ruling on a motion to dismiss, courts must draw all reasonable inferences in favor of the plaintiff. *Davis v. Central Can Co.*, No. 05 C 1563, 2006 WL 2255895 at * 1 (N.D. Ill. Aug. 4, 2006). At this stage of the case, it would be improper to infer from the fact that CMGT is in bankruptcy that it will *never* pay any portion of the $17 million default judgment. Thus, defendants' motion to reconsider should be denied.

In their motion to reconsider, defendants criticize this Court's reliance on a quotation from *Northern Illinois Emergency Physicians v. Landaut, Omahana & Kopka, Ltd*. (Mot. to Reconsider at pg. 4.) Defendants argue that the Court's reliance was misplaced because the quotation is merely a summary by the Supreme Court of the Appellate Court's decision that was under review. The portion of *Northern Illinois* quoted by this Court states:

>In this case before us here, the appellate court found *Sterling Radio Stations* to be inapposite because, unlike *Gruse*, *Sterling* did not speak to the issue of whether unsatisfied judgments can constitute actual damages in legal malpractice cases. Rather, it addressed the separate question of whether benefits received by an injured party from a source independent of and collateral to the tortfeasor will diminish the damages the injured party could otherwise recover from the tortfeasor.[4]

*N. Illinois Emergency Physicians v. Landaut, Omahana & Kopka, Ltd.*, 216 Ill.2d 294, 309 (2005.) The Illinois Supreme Court then explained the arguments made by the defendants in their appeal to the Supreme Court as follows:

>The defendant attorneys in this case argue that the appellate court misinterpreted and misapplied both *Sterling Radio* and *Gruse*…Specifically, they contend that because the materials adduced in support of their motion showed that NIEP had not been compelled to pay the indemnity judgment and was unlikely to ever actually pay that judgment, the burden should have shifted to NIEP to produce some factual basis to show that it suffered pecuniary injury and was entitled to judgment in its favor. According to the attorneys, that did not happen. The appellate court permitted NIEP's action to proceed based on nothing more than the existence of the adverse indemnity judgment. In the attorney's view, that was improper.

*Northern Illinois*, 216 Ill.2d at 310. In their Motion, defendants argue that this Court's reliance on *Northern Illinois* was misplaced because "nothing in *Northern Illinois* should be read to adopt or sanction the reasoning of the reversed Appellate Court decision." Defendants are wrong. In *Northern Illinois*, the Illinois Supreme Court held that:

>We agree with the defendant attorneys that the appellate court erred in reversing the circuit court's order granting summary judgment and allowing NIEP's malpractice claim to go forward. In our view, however, the *flaw* in the appellate court's judgment is *not* related to shifting burdens of production, nor does it turn on whether the existence of an unsatisfied judgment is sufficient, in and of itself, to withstand a challenge to the damages element of a legal malpractice claim on a motion for summary judgment. The problem with the appellate court's disposition is that it fails to take into account the actual effect of the indemnity judgment under the facts of this case.

---

[4] The quotation by this Court starts at "Sterling did not speak…" Plaintiff included the first part of that sentence for completeness.

*Northern Illinois*, 216 Ill.2d at 310. Clearly, the Illinois Supreme Court had the opportunity to reject the reasoning of the reversed Appellate Court and not only did it not do so, but it expressly stated that the flaw in the Appellate Court's judgment was *not* related to the Appellate Court's finding that an unsatisfied judgment is evidence of actual damages even when unrebutted evidence has been presented that the judgment will likely not be paid. Thus, while the Illinois Supreme Court may not have expressly said "we adopt the reasoning of the Appellate Court," it can certainly be inferred that the Court agreed with the Appellate Court's reasoning. Therefore, defendants' criticism of this Court's reliance on *Northern Illinois* should be rejected.

Finally, defendants merely rehash the arguments originally made in their motion to dismiss. (*Compare* Reply in Support of Mot. to Dismiss at pp. 15-16 *with* Mot. to Reconsider and/or For Other Relief at pp. 2-5.) Because this is an improper use of a motion to reconsider, defendants' Motion should be denied. *Nat'l Presto Indus., Inc.*, 2004 WL 1093390 at *2.

### III.   ARGUMENT II: Defendants' Motion for Certification Under 28 U.S.C. §1292(b) Should be Denied

To take an interlocutory appeal, defendants must satisfy §1292(b), which limits review to issues that involve "a controlling question law as to which there is substantial ground for difference of opinion" and that an immediate appeal of "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The question presented by defendants is whether a monetary judgment on which no payment has been made and as to which no payment will ever be made constitutes actual monetary damages in a legal malpractice case under Illinois law (the "Question"). Defendants' request for an interlocutory appeal should be denied because the Question is not controlling, is not subject to substantial ground for difference of opinion, and an immediate answer to the Question will not materially advance the ultimate termination of the litigation.

First, defendants argue that the question presented is controlling; i.e., its resolution is likely to affect the further course of the litigation. According to defendants, the Question is "controlling" because, if they are correct, Count II fails as a matter of law. Defendants are wrong. The Question is not ripe for immediate appeal because if the Trustee prevails on Count I, some or all of the $17 million judgment will be paid. To take an interlocutory appeal, defendants must present a question that is *likely* to affect the course of the case. Because Count I has already survived a motion to dismiss, it cannot be said that the Trustee is *likely* to lose that Count. Moreover, because Count I and Count II are proceeding simultaneously, there is no reason to delay the entire case for an answer to a question that may not be relevant at the conclusion of the litigation. Because resolution of the Question will not likely affect the further course of the litigation, defendants' Question should not be certified.

Second, there is not a substantial ground for difference of opinion as to how the Illinois Supreme Court would answer the Question. Defendants argue that *Sterling* and *Gruse* are conflicting and that the Illinois Supreme Court in *Northern Illinois* failed to provide any guidance regarding the Question. Defendants are wrong. *Sterling* addressed whether the "collateral source" rule (i.e., benefits received by an injured party from a source independent of, and collateral to, the tortfeasor will not diminish damages) applied to the facts of that case. *Sterling Radio Stations, Inc. v. Weinstine*, 328 Ill. App. 3d 58, 64-65 (1st Dist. 2002). As the appellate court in *Northern Illinois* pointed out (and as this Court recognized), "*Sterling* did not speak to the issue of whether unsatisfied judgments can constitute actual damages in legal malpractice actions." *Northern Illinois*, 216 Ill.2d at 309. *Gruse*, on the other hand, held that an unsatisfied judgment can constitute actual damages in legal malpractice actions. *Gruse*, 138 Ill.

13

App. 3d at 698.  Because *Sterling* and *Gruse* addressed two different issues, they are not conflicting.

Moreover, the defendants in *Northern Illinois* expressly argued to the Illinois Supreme Court that in the face of evidence that an unsatisfied judgment has never been paid and will likely never be paid, a legal malpractice plaintiff must present some evidence of pecuniary injury (e.g., evidence that the judgment will be paid.)  *Id*. at 310.  In other words, the defendants in *Northern Illinois* made the same argument that defendants are making here.  The Illinois Supreme Court's response to defendants' argument was that, "the flaw in the appellate court's judgment is *not* related to shifting burdens of production, nor does it turn on whether the existence of an unsatisfied judgment is sufficient, in and of itself, to withstand a challenge to the damages element of a legal malpractice claim."  *Id*. (emphasis added.)  Although the Illinois Supreme Court decided *Northern Illinois* on other grounds, its finding regarding what flaws were *not* made by the appellate court, especially in light of the arguments made by the defendants in that case, strongly suggests that if presented with the Question, it would answer the Question in the affirmative.  Thus, there is not a *substantial* ground for difference of opinion as to how the Supreme Court would answer the Question.  For this reason, defendants' motion to certify the Question for immediate appeal should be denied.

Third, an immediate appeal will not materially advance the termination of this litigation.  Defendants argue that this case would be materially sped up if the Question is answered by the appellate court.  Defendants are wrong.  The Question relates to just Count II -- not Count I.  Thus, regardless of how the Question is answered, Count I will proceed.  Although Counts I and II are separate and distinct counts, both counts arise from the same set of facts and will require some of the same evidence.  Because Count I will proceed regardless of whether or how the

14

Question is answered, an immediate appeal will not *materially* advance the termination of this litigation. *See e.g.*, *Muniz v. Rexnord Corp.*, No. 04 C 2405, 2007 WL 257710 at *2 (N.D. Ill. Jan. 23, 2007) (denying motion to certify question for interlocutory appeal where resolution of the question would not affect the remaining claims).  Thus, defendants' motion to certify the Question for immediate appeal should be denied.

### IV.     CONCLUSION

For all of the reasons stated herein, defendants' Motion should be denied.

Dated: August 9, 2007                                  Respectfully submitted,
                                                       DAVID GROCHOCINSKI, not individually,
                                                       but solely in his capacity as the Chapter 7
                                                       Trustee for the bankruptcy estate of
                                                       CMGT, INC.

                                                       BY:_____/s/ Robert D. Carroll_____
                                                               Plaintiff's attorneys

Edward T. Joyce
Arthur W. Aufmann
Robert D. Carroll
EDWARD T. JOYCE & ASSOC., P.C. - Atty No. 32513
11 South LaSalle Street, Ste., 1600
Chicago, Illinois 60603

## CERTIFICATE OF SERVICE

      I, Robert D. Carroll, an attorney, hereby certify that I caused a true and correct copy of the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER AND/OR FOR OTHER RELIEF** to be served upon the counsel of record via email through the United States District Court Electronic Filing System this 9th day of August, 2007.

                                              /s/ Robert D. Carroll
                                              Robert D. Carroll

Case 1:06-cv-05486   Document 53   Filed 08/09/2007   Page 16 of 16