# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| DAVID GROCHOCINSKI, not individually but solely in his capacity as the Chapter 7 Trustee for the bankruptcy estate of CMGT, INC., | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 06 C 5486 |
| v. | ) ) | Judge Virginia M. Kendall |
| MAYER BROWN ROWE & MAW LLP and RONALD B. GIVEN, | ) ) ) ) | |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
## FOR RECONSIDERATION AND/OR FOR OTHER RELIEF

Stephen Novack
Mitchell L. Marinello
Steven Cizewski
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, IL 60606
(312) 419-6900
Doc# 186602

**ARGUMENT**

The Trustee's response (the "Response" or "Resp. at ___") to Defendants' motion for reconsideration (the "Reconsideration Motion") cannot avoid the following inescapable truth: The only way the Trustee can win this case is by proving that the very company that will get the proceeds of his victory filed a <u>meritless</u> claim to begin with -- the assertion of which caused CMGT's <u>downfall</u> in the first place. The Response fails to come to grips with this fundamental point. Instead, it spends most of its effort "responding" to arguments that Defendants did <u>not</u> make on reconsideration. Indeed, almost half of the Response (all of page one and all of Section II.B, pages 3-9) seeks to uphold this Court's rejection of Defendants' "fraud on the Court" argument -- even though Defendants did <u>not</u> seek reconsideration thereof.[1]

This Reply will first address the Response's opposition to the arguments Defendants <u>do</u> make for reconsideration. It will then address the Response's opposition to Defendants' <u>alternative</u> request for certification.

**I.**

**RECONSIDERATION**

With all due respect, Defendants believe that the Opinion "patently misunderstood" their argument and "misapprehended" certain of the facts and law. These are appropriate grounds for reconsideration and, if the Court agrees with Defendants with respect thereto, they mandate reconsideration and reversal.

In particular, Defendants seek reconsideration on two grounds. <u>First</u> -- <u>without</u> regard to any fraud on the Court -- the entire case should be dismissed because the absurd result sought would be

---

[1] By not seeking reconsideration on this point (and on various other parts of the Court's ruling), Defendants do not concede that those other parts of the ruling were correct. Rather, Defendants reserve their right to challenge them later, on appeal or otherwise.

to line Spehar's pockets as a "reward" for: (a) asserting a meritless claim against CMGT; (b) preventing it from closing the Newco deal; and (c) destroying it. Second, at the very least, Count II should be dismissed for lack of damages.

### A.     The Entire Case Should Be Dismissed Because It Seeks An Absurd Result

In the "Facts" section of the Complaint (which is incorporated in both Counts I and II), the Trustee alleges: (1) that Spehar's claim was meritless and succeeded only because of Defendants' alleged failure to defend it (e.g., ¶64); and (2) that it was Spehar's meritless TRO that prevented the Newco deal from closing and destroyed CMGT (e.g., ¶65). Thus, the Trustee admits that Spehar filed meritless claims against CMGT and, by doing so, destroyed CMGT. Despite this, if the Trustee wins either Count I or Count II, Spehar -- as the holder of the meritless Default Judgment -- will get the lion's share of any recovery. Accordingly, the argument that follows -- which demonstrates the absurdity of rewarding Spehar for its wrongful conduct -- applies to both Counts I and II.

####    1.    To Win, The Trustee Must Prove
####         That Spehar's Claim Was Without Merit

At the last hearing, Defendants' counsel pointed out that there were only two possibilities -- Spehar's claim was either meritorious or it was not. If meritorious, Defendants could not be held liable under Count II because the judgment would have resulted not from malpractice, but from the applicable facts and law. Thus, Count II can succeed only if (in addition to the other malpractice elements) Spehar's claim was meritless and Spehar prevailed only because of Defendants' alleged failure to defend it. The Court expressed doubt about this analysis. With all respect, however, that is the law.

Under Illinois law, to establish proximate causation in cases where, as here, the plaintiff alleges that the "underlying action never reached trial because of the attorney's negligence," the plaintiff "is required to prove that but for the attorney's negligence, the plaintiff would have been successful in that underlying action. A legal malpractice plaintiff must therefore litigate a 'case within a case.'" Tri-G, Inc. v. Burke, Bosselman & Weaver, 222 Ill.2d 218, 226 (Ill. 2006); Gov'tal Interins. Exch. v. Judge, 221 Ill.2d 195, 200 (Ill. 2006). Stated another way, a malpractice plaintiff "must prove that counsel's negligence resulted in the loss of the underlying action." Webb v. Damisch, 362 Ill. App. 3d 1032, 1038 (Ill. App. Ct. 2005). Here, the "case within a case" is the Spehar Lawsuit. The Trustee's claim against Defendants simply cannot stand unless the Trustee pleads and proves that, but for Defendants' alleged negligence, CMGT would not have lost the Spehar Lawsuit. In other words, the Trustee must plead and prove that CMGT would have avoided any liability because the Spehar Lawsuit was meritless and CMGT should have won it. Maintaining that the Spehar Lawsuit had merit would be contrary to this clear pleading requirement and would defeat the Trustee's malpractice claim for failure to allege causation.

Indeed, if the Trustee maintains that the Spehar Lawsuit had merit, he also defeats his own claim for damages. As the Illinois Supreme Court has held, "[e]ven if negligence on the part of the attorney is established, no action will lie against the attorney unless that negligence proximately caused damage to the client. The existence of actual damages is therefore essential to a viable cause of action for legal malpractice." Tri-G, 221 Ill. 2d at 226. The Trustee alleges that the damages in this case resulted from the loss of the Spehar Lawsuit, but if the Spehar Lawsuit had merit and CMGT would have lost it anyway, then Defendants not only did not cause any loss, but there were no damages that resulted from anything Defendants did.

And the Trustee knows this. Although the Response dances around the issue in a vague and confusing way (see, e.g., Resp. at 5, n. 2), the Complaint <u>directly</u> alleges the Spehar Lawsuit's lack of merit by alleging that, but for Defendants' alleged failure to defend it, Spehar would have <u>lost</u>. For example, paragraph 64 of the Complaint states as follows:

> If Given/MBRM had (a) not abandoned CMGT after SC filed suit, (b) advised CMGT to file a special and limited appearance to contest California's jurisdiction, (c) defended CMGT in the SC litigation, and/or (d) advised CMGT to contest SC's motion for an injunction, SC would not have obtained injunctive relief or damages against CMGT.

In other words, the Trustee's theory is that Spehar's Lawsuit should and would have been defeated if only CMGT's attorneys had done any one or more of the following: (a) shown up at the hearing (instead of "abandoning CMGT"); (b) objected to the jurisdiction of the California Court; (c) defended CMGT in the case; or (d) opposed Spehar's request for an injunction. Moreover, victory would have been complete: no injunctive relief and no damages at all would have been awarded. These conditions could be possible only if the Spehar Lawsuit had no merit.

So, as admitted by the Trustee -- and as required by Illinois law -- the Trustee can win this malpractice case only if Spehar's claim is pleaded and proven to have been meritless in the first place. Yet, if Spehar's claim is proven to have been meritless (and the other elements of malpractice are proven), then the ironic and unjust result would be that <u>Spehar</u> will get the lion's share of the malpractice recovery, as now shown in subsections 2 and 3.

### 2.      Spehar Is The Real Party In Interest In This Case

Amazingly, the Response (at 5) intones that "there is nothing unusual about Spehar's interest in this case," as if Spehar is just an ordinary creditor, like any creditor in any bankruptcy case. The

Court should take such an obvious overstatement as an invitation to discredit the Response's entire position.

In fact, Spehar is just about the only person with an interest in this case (except for the Trustee and his counsel who hope to collect enough money so that they can be paid). Yet, Spehar caused this whole case to happen in the first place. After failing to find financing for CMGT for nearly three years, Spehar was upset that it was not being credited for the "financing" transaction CMGT finally did secure.[2] But, instead of allowing that transaction to close -- so that CMGT could survive -- and then later suing to get its alleged commission, Spehar filed suit against CMGT when it was out of money and blocked the transaction that CMGT and its shareholders wanted. In other words, if Spehar couldn't get a commission, then no one would be allowed to succeed. Spehar then obtained the $17 million Default Judgment based on speculation. Using the Default Judgment as a weapon, Spehar then unilaterally put CMGT into bankruptcy. And, then, Spehar funded this suit against CMGT's attorneys. And, under its agreement with the Trustee, Spehar is entitled to the lion's share of any recovery -- for example, over 90% if the Trustee wins $17 million.

In short, to say that "there is nothing unusual about Spehar's interest in the case" is ridiculous. Spehar is the reason this case exists, is the party funding it, and is the party that stands to gain the lion's share of it. In no way can Spehar be viewed as the typical bankruptcy creditor. Instead, it is the true party in interest.

---

[2] This "financing" -- i.e., the Newco deal -- was not true financing. It was a purchase of assets in exchange for, at CMGT's option, either $500,000 or 20% of Newco's stock.

### 3. If This Case Is Allowed To Proceed And The Trustee Prevails, The Result Would Be Absurd

The absurdity of the Trustee prevailing is obvious. That would mean that Spehar would be monetarily rewarded for having asserted a meritless claim that destroyed CMGT. As a result, the case should be dismissed.

Spehar filed a meritless lawsuit against CMGT and, as a result, got a $17 million Default Judgment that was uncollectible. How can the law reward Spehar for doing this? Yet if this case succeeds, that is exactly what will happen -- Spehar will get the lion's share of any recovery minus legal expenses and a comparatively modest fee for the Trustee. Similarly, how can the law allow Spehar to collect a judgment from CMGT's attorneys on the theory that they should have prevented Spehar from doing something wrong -- filing a meritless case? And, how can the law allow Spehar to collect its Default Judgment against CMGT's attorneys when the Default Judgment could not be collected against CMGT itself because CMGT was out of assets? Nothing more need be said.

### B. At The Very Least, Count II Should Be Dismissed For Lack Of Damages

Defendants' opening memorandum showed that, under Illinois law, a malpractice claim requires "actual damages" and, unless the client can plead and prove "that he has sustained a monetary loss," the malpractice action cannot succeed. Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd., 216 Ill. 2d 294, 327 (Ill. 2005). Defendants also showed that CMGT has never paid any portion of the Default Judgment and never will. Thus, CMGT suffered no damages from the Default Judgment. In opposition, the Response makes a number of arguments. As will now be shown, none of them holds any water.

### 1.     **The Gruse, Sterling and Landau Cases**

The Reconsideration Motion showed that, under <u>Sterling Radio Stations, Inc. v. Weinstine</u>, 328 Ill. App. 3d 58, 64-65 (Ill. App. Ct. 2002), a judgment that the client did not pay and never would pay cannot constitute the requisite malpractice damages. The Reconsideration Motion further showed that the <u>earlier</u> case of <u>Gruse v. Belline</u>, 138 Ill. App. 3d 689 (Ill. App. Ct. 1985), is not inconsistent with <u>Sterling</u>, and that neither is <u>Landau</u> (216 Ill. 2d 294). The Response's arguments to the contrary fail.

#### a.     **Gruse**

<u>Gruse</u> holds that an unpaid judgment can be "proper proof of damages" -- but <u>only</u> "absent any evidence to the contrary." <u>Gruse</u>, 138 Ill. App. 3d at 698. Thus, an unpaid judgment cannot be evidence of damages if there is contrary evidence that the unpaid judgment has not caused, and will not actually cause, any damages (e.g., because the judgment will never be paid). Here, no one disputes that CMGT did not pay one penny of the Default Judgment prior to its bankruptcy. Furthermore, <u>because CMGT no longer exists, it never will</u>. Thus, not only contrary, but undisputable, evidence exists establishing that the Default Judgment has not caused and <u>never will cause</u> any damages to CMGT.

The Response (at 9-10), however, asserts that <u>Gruse's</u> reference to "evidence to the contrary" means evidence that the two judgments at issue in that case were not valid or were not judgments at all. But, this reading makes no sense because no one in <u>Gruse</u> was disputing the validity or existence of the judgments -- only that they were unpaid. Why would the <u>Gruse</u> court be referring to matters that were not even before it -- particularly without any explanation of why it was doing so?

Moreover, even if the Trustee's tortured reading of Gruse were accepted, it would make no difference. As already explained, to state a claim for legal malpractice, a plaintiff must show that the malpractice caused him to suffer actual monetary damages. E.g., Landau, 216 Ill. 2d at 307. If malpractice results in a judgment being entered but the judgment is invalid or becomes non-existent, then the client has suffered no actual monetary damages and has no legal malpractice claim. It is equally true that a client also has no actual monetary damages if it never has to pay a judgment. The two situations are, for all practical and logical purposes, precisely the same: neither involves an actual, monetary loss. Accordingly, the Trustee's interpretation of Gruse merely proves Defendants' point.

The Trustee also argues that Defendants' reading of Gruse should be rejected because Gruse does not say "absent evidence that the judgment never will be paid." (Resp. at 10.) Yet, the Gruse court also did not say "absent any evidence that the judgment is invalid or does not truly exist." So, this argument also gets CMGT nowhere.

      **b.**    **Landau**

The Trustee's response to Defendants' motion to dismiss -- and this Court's Opinion (at 11) -- both concluded that the Illinois Supreme Court in Landau rejected Defendants' reading of Sterling. The Reconsideration Motion showed, however, that the language relied on for this proposition was not part of Landau's holding, but was merely the Supreme Court's summary (without any blessing) of what the Appellate Court had held in the case under review. Now, the Response goes though a lengthy analysis of Landau in an attempt to resurrect its point and support the Opinion. However, that analysis is both wrong and irrelevant. The Supreme Court never reached the issue of damages, because it found that the attorneys' purported negligence did not

proximately cause the alleged injury to the client. Landau, 216 Ill. 2d at 311. Landau had no reason to, and did not, comment on the Appellate Court's unnecessary damages analysis.

Moreover, even the reversed Appellate Court decision in Landau does not support the Trustee's position. That decision reversed summary judgment, ruling that an outstanding and unpaid judgment "could constitute proof of actual damages as a result of [the lawyers'] alleged negligence, absent any evidence to the contrary." Id. at 304 (emphasis added). It then sent the case back for further proceedings.

This does not show that an unpaid judgment always constitutes proof of actual, monetary damages; it merely shows that an unpaid judgment could -- absent evidence to the contrary -- constitute actual monetary damages. In Landau, there was an unpaid judgment against NIEP for $4,000,000 and there was a dispute about whether NIEP would ever pay it. The defendants argued that NIEP had denuded itself of assets and, thus, was judgment proof. They also argued that TMC, the judgment creditor, had agreed not to enforce the judgment against NIEP. Based on these two points, the defendants argued that NIEP would never pay the judgment and that the judgment did not involve an actual loss. NIEP was still in existence (not being liquidated in a Chapter 7 bankruptcy), however, and the Appellate Court ruled that defendants' arguments presented issues of fact. The Supreme Court also held that at least one fact issue was present. ("The question of whether an agreement not to enforce the indemnity judgment actually existed was not resolved." Id. at 302.)

That situation is critically different from the situation in this case. Here, Defendants are not arguing that CMGT deliberately denuded itself of assets or that the Trustee has agreed not to pay the Default Judgment. Rather, Defendants are arguing that there are no possible circumstances

under which CMGT could or will pay the Default Judgment, and there is nothing to try with respect to that fact.

### 2. **Possible Payment From Count I**

Recognizing that the Trustee's previous arguments are insufficient to defeat reconsideration, the Response resorts to an argument that it did <u>not</u> make in response to Defendants' motion to dismiss. The Response's new argument is that the Trustee <u>might</u> prevail on Count I and, <u>if</u> so, <u>may</u> pay some of the Default Judgment to Spehar. This new argument fails for a number of separate and independent reasons.

### a. **Too Speculative**

First of all, even if any such <u>future</u> payment could otherwise constitute damages (as will be shown below, it could <u>not</u>), any such "damages" are too speculative to support a malpractice claim. As the Illinois Supreme Court held in <u>Landau</u>, damages in a malpractice action under Illinois law cannot be based on supposition or conjecture:

> Where the mere possibility of harm exists or damages are otherwise speculative, actual damages are absent and no cause of action for malpractice yet exists. Damages are considered to be speculative . . . if their existence itself is uncertain . . . . <u>Id.</u> at 307.

Here, any payment the Trustee might make on the Default Judgment is years away and is only a "mere possibility" based on future contingencies -- such as the Trustee winning Count I. (Resp. at 10.) Thus, even if a future payment of the Default Judgment somehow could translate into a genuine "loss" by CMGT (it cannot), such a potential future "loss" is speculative and invalid under <u>Landau</u>.

### b.     Not A Loss To CMGT

Even if the Trustee recovered on Count I and paid some of the proceeds to Spehar on account of the Default Judgment, that would not be a loss (or damages) suffered by CMGT. That is because CMGT liquidated and ceased to exist when the order for relief was entered in its Chapter 7 bankruptcy case. See In re Vitreous Steel Prods. Co., 911 F.2d 1223, 1232 (7th Cir. 1990) ("Because this is a liquidation under Chapter 7, there will be no reorganization."); In re F.A. Dellastatious, Inc., 121 B.R. 487, 493 (Bankr. E.D. Va. 1990) (in Chapter 7, "the Debtor has been liquidated and ceases to exist as an entity"); In re The Looking Glass, Ltd., 113 B.R. 463, 467 (N.D. Ill. 1990) (debtor corporation has been liquidated and gains no benefit from how its assets are distributed). As a result, any such payment would not be made by CMGT, and, thus, CMGT will still never have paid any part of the Default Judgment.

### c.     Not A Loss At The Relevant Time

The Response's argument also ignores another basic tenet of bankruptcy law. The bankruptcy estate includes "all legal or equitable interests of the debtor in property <u>as of the commencement</u>" of bankruptcy. 11 U.S.C. § 541(a)(1) (emphasis added). The Seventh Circuit has held:

> [S]ection 541(a) provides that a debtor's estate consists of "all legal or equitable interests of the debtor in property as of the commencement of a case." Thus, whatever rights a debtor has in property at the commencement of the case continue in bankruptcy -- no more, no less. Section 541 "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case."

Moody v. Amoco Oil Co., 734 F.2d 1200, 1213 (7th Cir. 1984); see also Bank of Marin v. England, 385 U.S. 99, 101 (1966) ("The trustee succeeds only to such rights as the bankrupt possessed; and the trustee is subject to all claims and defenses which might have been asserted against the bankrupt

-11-

but for the filing of the petition."); Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 357 (3rd Cir. 2001) ("The plain language of section 541 [] prevents courts from taking into account events that occur after the commencement of the bankruptcy case.").

In other words, because CMGT did not pay any part of the Default Judgment <u>before</u> the order for relief was entered, CMGT suffered no damages, and no cause of action accrued <u>before</u> CMGT's bankruptcy. As a result, the Trustee cannot now pursue a cause of action based on the idea that he may pay some or all of the Default Judgment <u>after</u> the bankruptcy.

## II.

## **CERTIFICATION**

Pursuant to 28 U.S.C. §1292(b), Defendants asked the Court to certify the following Issue:

> Can a monetary judgment -- on which no payment has been made and as to which no payment ever will be made -- constitute actual monetary damages in a legal malpractice case under Illinois law?

Defendants demonstrated that there are four factors that determine whether certification should be granted, each of which is satisfied here. The Response fails as to all of them.

### A.   **First And Second Factors**

The first two factors require that the Issue (1) presents a question of law (2) that is controlling. The Response does not dispute that both are satisfied. The Issue certainly is one of law, and, if Defendants are correct, Count II will be dismissed.

### B.   **The Third Factor**

The third factor is whether the Issue is contestable. This Court's Opinion itself suggests that there is a substantial ground for difference of opinion as to how <u>Landau</u>, <u>Sterling</u>, and <u>Gruse</u> apply

to a situation where a default judgment will never be paid. The Response argues vehemently against this, but the analysis is superficial.

It is beyond cavil that an actual, monetary loss is required to plead and sustain a claim for legal malpractice. Landau, 216 Ill. 2d at 327. The question posed by this case is whether an unpaid judgment incurred prior to bankruptcy can constitute such a monetary loss. Defendants believe that it obviously does not qualify, but, at the very least, the issue is contestable. The Trustee, on the other hand, argues that the issue is not contestable. To do so, the Trustee must first deny that there is any conceptual difference between actually paying money out of pocket on a judgment and having a judgment entered that will never have to be paid. Enough said on that point.

The Response's discussion of the case law is unreliable. It dismisses Sterling by saying that it simply applies the "collateral source" rule. (Resp. at 13.) That misstates Sterling -- which expressly held that the collateral source rule did not apply, and its ruling had nothing to do with it. 328 Ill. App. 3d at 64. Instead, Sterling held that, because the judgment was paid by someone else and had no financial consequence for the plaintiff, the judgment did not cause the plaintiff to suffer an actual loss and therefore could not serve as a basis for damages. Id. at 64-64. Because the plaintiff could not plead damages, the malpractice case was dismissed. Id. at 65.

Logically, Sterling applies here. Like the plaintiff there, CMGT never paid a penny of the Default Judgment and will never have to. As a result, as in Sterling, the Default Judgment has no financial consequence for the plaintiff (here, CMGT) and does not qualify as a monetary loss.

The Response (at 14) quotes Landau as saying that "Sterling did not speak to the issue of whether unsatisfied judgments can constitute actual damages in legal malpractice actions." In making this statement, however, Landau was describing the reasoning of the lower court, not making

-13-

its own comment on Sterling.  Moreover, what is important about Sterling, is not that it sets up a general rule about whether unsatisfied judgments constitute damages, but, rather, that it focuses on whether a particular judgment does or does not represent an actual monetary loss to a particular client.  In Sterling, where the client does not have to pay the judgment, the court reaches the logical and compelling conclusion that the client suffered no monetary loss.  In Gruse, on the other hand, where the client does have to pay the judgment (because the judgment against that individual is outstanding and there is no evidence that he will file bankruptcy), the client does have an actual monetary loss and is entitled to pursue a malpractice claim.  The unifying principle is whether there is an actual monetary loss.  Here, there is none.

Because the requirement of an actual monetary loss is a central tenet of Illinois malpractice law, it certainly is contestable whether an unpaid judgment that never will be paid by the judgment debtor constitutes the "evidence to the contrary" noted in Gruse and in Landau.

## C.   **The Fourth Factor**

The fourth factor is whether an immediate appeal may materially advance the litigation.  The Response denies this, arguing that Count I will go forward and that some of the evidence related to Count I is also relevant to Count II.  But that statement misses the larger issue.

Certification may be and has been granted as to only part of a case even though the rest of the case will carry on.  EEOC v. Sidley Austin Brown & Wood LLP, 406 F. Supp. 2d 991, 997-98 (N.D.Ill. 2005).  The test is whether getting an answer to the certified issue will materially advance the litigation as a whole.  Id. (reduction in trial complexity satisfied speed requirement).  Here, allowing certification as to Count II would have several major advantages.

If Defendants are correct, Count II would be eliminated forever. Among other things, that would eliminate the following, among other things:

- the need to investigate why Spehar amended his complaint to state a claim for money damages when CMGT was no longer in operation and had no assets;

- the need to try the "case within a case" -- including issues of personal jurisdiction, injunctive relief, and the merits of the Spehar case itself -- although the merits of Spehar's claims would be relevant, this literally would save the Court and parties from preparing a second lawsuit as part of this one;

- the need to hire experts to testify about whether California courts routinely grant motions to vacate default judgments, especially where the trial judge has noted that he expects such a motion; and

- the need to examine whether the Default Judgment caused any loss to CMGT.

This would save the Court and the parties a tremendous amount of time and effort. It also would simplify the case, likely making it easier to resolve. Thus, all of the four criteria for granting certification are present and the motion should be granted.

## CONCLUSION

For the foregoing reasons, Defendants Mayer Brown and Ronald Given respectfully request that their motion for reconsideration be granted in all respects along with such other and further relief as is proper.

                MAYER BROWN ROWE AND MAW AND
                RONALD GIVEN


                By:   /s/ Stephen Novack
                            One of Their Attorneys

**CERTIFICATE OF SERVICE**

  Stephen Novack, an attorney, hereby certifies that he caused a true and correct copy of the foregoing **Defendants' Reply in Support of Their Motion for Reconsideration and/or for Other Relief** by electronically filing the document with the Clerk of Court using the ECF system to:

> Edward T. Joyce
> Arthur W. Aufmann
> Robert D. Carroll
> EDWARD T. JOYCE & ASSOC., P.C.
> 11 S. LaSalle St.
> Chicago, IL 60603

on this 23rd day of August, 2007.

                 /s/ Stephen Novack