# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| DAVID GROCHOCINSKI,<br>not individually, but solely in his<br>capacity as the Chapter 7 Trustee<br>for the bankruptcy estate of CMGT,<br>Inc., | ) ) ) ) ) | |
| Plaintiff, | ) | Case No. 06 C 5486 |
| | ) | |
| v. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| MAYER BROWN ROWE & MAW<br>LLP, RONALD B. GIVEN, and<br>CHARLES W. TRAUTNER, | ) ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Grochocinski, in his capacity as the Chapter 7 trustee for the bankruptcy estate of CMGT, Inc., ("Plaintiff"), has moved for a protective order to prohibit the production of privileged documents to Defendants Mayer Brown Rowe & Maw LLP, Ronald B. Given, and Charles W. Trautner ("Defendants"). Plaintiff asserts these documents, as identified in his privilege log, are protected by the attorney-client privilege and the work-product doctrine. Defendants object to the protective order, arguing in part that all documents relating to Plaintiff's pre-lawsuit investigation and mental impressions about this case are not privileged because Plaintiff's pre-lawsuit investigation has been put at-issue and because any attorney-client or work product privileges have been waived. For the reasons stated below, the Court grants in part and denies in part Plaintiff's motion.

# I. FACTUAL BACKGROUND

## A. PRE-SUIT INVESTIGATION

On September 21, 2004, Plaintiff was appointed the Chapter 7 trustee for the bankruptcy estate of CMGT, Inc. ("Estate"). After Plaintiff was appointed trustee, he learned that the Estate may have legal malpractice claims against Defendants, its former attorneys. Because Plaintiff had no involvement with CMGT prior to its bankruptcy, he did not have first hand knowledge of the occurrence facts that gave rise to the potential malpractice claim. Thus, he and his attorneys conducted a pre-suit investigation and evaluation of potential claims against Defendants and others.

Plaintiff's pre-suit investigation included conducting legal research, speaking with occurrence witnesses, and reviewing documents relating to CMGT. Relvant to this motion, Plaintiff and his attorneys had discussions with Gerry Spehar ("Spehar") about CMGT and related matters that were eventually alleged in Plaintiff's complaint. Spehar is the principal of Spehar Capital, LLC ("SC"), which CMGT hired pursuant to a written contract to locate and secure sources of financing for CMGT. Plaintiff's claims relate directly to SC and events in which SC was involved.

## B. MALPRACTICE ACTION FILED AND REMOVED TO FEDERAL COURT

On August 23, 2006, Plaintiff filed a two-count complaint against Defendants in the Circuit Court of Cook County, Illinois. The Complaint alleges Defendants committed legal malpractice in their representation of CMGT, Inc. in a previous lawsuit in California against

SC by (1) negligently advising CMGT not to settle the claim with SC prior to litigation and (2) by negligently advising CMGT not to appear in, and defend against, the litigation that SC ultimately filed. A $17 million default judgment was entered in that lawsuit ("Spehar Lawsuit") against CMGT.

On October 10, 2006, Defendants removed the case to the United States District Court for the Northern District of Illinois. On November 30, 2006, Defendants moved to dismiss Plaintiff's complaint, arguing that Plaintiff failed to establish the elements of a legal malpractice claim as required under Rule 12(b)(6), and that this case should be dismissed with prejudice as a sanction because it is a "fraud on the judicial system."

According to Defendants, the Spehar Lawsuit and this lawsuit are part of a fraudulent scheme because SC knew at the time it filed the Spehar lawsuit that CMGT could not afford to defend itself, and that as a creditor of CMGT, it could receive a substantial portion of any settlement or judgment in this lawsuit. After the default judgment was entered, the bankruptcy court approved a post-petition financing arrangement between SC and CMGT, in which SC agreed to advance up to $18,500 to the Estate to pursue this lawsuit and Plaintiff agreed that SC would receive a large share of the recovery in this case.

After the Court denied Defendants' motion to dismiss, Defendants moved the Court to reconsider, arguing the court overlooked the critical fact that SC is the true party in interest in this lawsuit because it stands to recover the lion's share of any recovery by Plaintiff. Defendants contend that Plaintiff deliberately or through inadvertence made no effort to vacate the Default Judgment, but instead decided to partner with Spehar to pursue this case.

Pl. Mot. at 5-6; Dock. No. 50, Mot. to Reconsider at 1-2. Defendants argued that even absent evidence of fraud, the Court should dismiss the case because the result will be "absurd" if Plaintiff wins.

## C.     LIMITED DISCOVERY ORDERED TO PROCEED

District Court Judge Virginia M. Kendall denied Defendants' motion to reconsider, but expressed concern about Plaintiff's failure to move to vacate the default judgment that was entered in the Spehar lawsuit, SC's involvement in financing the costs of this litigation, and Plaintiff's motivation for filing this case. Def. Resp., Ex. A. As a result, Judge Kendall ordered the parties to engage in limited discovery regarding this "unclean hands" issue. *Id.* She indicated that discovery on this issue is to be broad, covering Plaintiff's behavior throughout the period of time leading up to this lawsuit. *Id.* at 4-5*;* Def. Resp., Ex. B at 6. Defendants indicated their intent to take discovery from Plaintiff and SC, as well as from some of CMGT's shareholders to attempt to show the inadequacy of Plaintiff's pre-filing investigations.[1] Def. Resp., Ex. A.

Accordingly, Defendants served Plaintiff with interrogatories and document requests, and also issued a third-part subpoena to Spehar. Plaintiff objected to most of the written discovery requested, and filed a motion for a protective order asserting that the documents

_____

[1] Defendants stated to the Court that "they believed these shareholders would testify that (a) they do not support the Complaint; (b) Plaintiff did not contact them to verify or discuss the Complaint's allegations (which are made largely "on information and belief"); and (c) had they been contacted by Plaintiff before he filed the Complaint, they would have told Plaintiff they do not support his Complaint."

are protected by the attorney-client privilege and/or the work product doctrine. That motion is currently before this Court.

## II. LEGAL STANDARDS

### A. ATTORNEY-CLIENT PRIVILEGE

In civil actions involving an element of a claim or defense to which state law applies, privilege is determined in accordance with state law. *Caremark, Inc. v. Affiliated Computer Servs., Inc.,* 192 F.R.D. 263, 265 (N.D. Ill. 2000); FED.R.EVID. 501. Because this Court has jurisdiction over this case based on diversity of citizenship, and Plaintiff's legal malpractice claim arises under Illinois law, the issue of attorney-client privilege is governed by Illinois law. *Caremark,* 192 F.R.D. at 265; FED.R.EVID. 501.

Under Illinois' definition of the attorney-client privilege, "where legal advice of any kind is sought from a professional legal advisor in his capacity as such, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by himself or by the legal advisor," unless the protection is waived. *Fischel & Kahn, Ltd.* v. *van Straaten Gallery, Inc.,* 727 N.E.2d 240, 243 (Ill. 2000).

### B. WORK-PRODUCT DOCTRINE

While issues of attorney-client privilege are controlled by the forum state's law in diversity cases, issues of work-product doctrine are controlled by federal law. *Abbott Laboratories* v. *Alpha Therapeutic Corp.,* 200 F.R.D. 401, 405 (N.D. Ill. 2001). The work product doctrine protects "1) [d]ocuments and tangible things; 2) prepared in anticipation of litigation or for trial; and 3) by or for a party or by or for a party's representative." *Hickman*

*v. Taylor,* 329 U.S. 495 (1947); *Caremark, Inc.* v. *Affiliated Computer Services, Inc.,* 195 F.R.D. 610, 613 (N.D. Ill. 2000); Fed. R. Civ. P. 26(b)(3). "Opinion" work product which reveals the mental impressions or opinions of an attorney is generally not discoverable. *Caremark,* 195 F.R.D. at 616. "Ordinary" or "fact" work product may be discoverable only if, after the party asserting the protection establishes the necessary elements, the party seeking discovery of the documents demonstrates a substantial need for the information and that it would be exceedingly difficult to obtain the information any other way. *Id.*

Materials that are produced in the ordinary course of a party's business, and not to prepare for litigation, are outside the scope of the work product doctrine. *Allendale Mut. Ins. Co.,* v. *Bull Data Sys., Inc.,* 145 F.R.D. 84, 87 (N.D. Ill. 1992). To establish work product protection, a party must show the primary motivating purpose behind the creation of a document was to aid in possible future litigation. *Id.* The person preparing the materials may be any representative of the client, regardless of whether the representative is acting for the lawyer. *Caremark,* 195 F.R.D. at 615. Thus, whether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it. *Id.*

## III. DISCUSSION

Plaintiff asserts the documents included in its privilege logs are protected by either attorney-client privilege or the work product doctrine, and therefore need not be disclosed to Defendants. Defendants argue that all of the documents should be produced because

Plaintiff waived any privilege over the communications by putting Plaintiff's pre-filing investigations at issue. Alternatively, Defendants argue that even if the at issue waiver doctrine does not apply, most of the documents should still be produced because Plaintiff waived his attorney-client privilege by disclosing the documents to a third party, and because Defendants have a substantial need for the documents that are otherwise protected by the work product doctrine. The Court addresses each of these issues in turn.

## A.     THE "AT-ISSUE" WAIVER DOCTRINE

Defendants argue that Plaintiff's pre-filing investigations and his "good faith" belief that he has a legitimate malpractice claim are at issue, thus waiving any attorney-client or work product privileges over the relevant documents. This case presents a unique situation, prompting Defendants to challenge Plaintiff's intentions for filing this lawsuit. The events leading up to this lawsuit have also caused Judge Kendall to question whether Plaintiff filed this lawsuit in good faith. The Court briefly outlines these events, as presented by Defendants, below.

### 1.     Relationship Between CMGT and SC

In 2001, CMGT retained SC to locate financing for its start-up business. Pursuant to the parties' written agreement, SC was retained on a "non-exclusive basis" and was entitled to a "finders fee" upon the successful closing of financing from a list of prospects that was attached to the Agreement.  By 2003, however, SC still had not secured any financing, and CMGT did not have the financial ability to continue in business.

Accordingly, in mid 2003, CMGT pursued a deal with one of its own shareholders to which the shareholder and a group of outside investors would form a new entity ("Newco") which would be capitalized with $2.5 million. Newco would then purchase CMGT's assets for either $500,000 in cash or a 20% ownership in Newco (the "Newco Deal"). CMGT's shareholders approved the Newco Deal and voted to take a 20% interest in Newco. This deal was initiated and negotiated without SC's assistance, nor were any of the involved parties listed on the prospect list. Thus, according to CMGT, SC was not entitled to any compensation under the Agreement.

### 2.     The California Lawuit

When SC learned of the Newco Deal, however, it demanded compensation and the right to participate in Newco's future financing activities. CMGT rejected SC's demand, and following unsuccessful settlement discussions, SC sued CMGT in California state court seeking, and ultimately obtaining, an injunction preventing the closing of the Newco Deal.

Defendants argue that SC filed this action in bad faith, evidenced by SC claiming entitlement to compensation upon the closing of the deal, but then seeking to prevent that very deal from closing in the first place. Had SC acted in good faith, Defendants argue, it would have filed a lawsuit allowing the Newco Deal to close, but seeking to freeze CMGT's proceeds from the Deal until SC's right to compensation, if any, could be decided. Plaintiff argues, however, that SC believed an injunction was necessary because if the Newco Deal closed, CMGT would have sold all of its assets to Newco and a money judgment against it would "be uncollectible."

With knowledge of CMGT's financial state without the Newco Deal, SC nevertheless amended the Spehar Lawsuit to seek money damages, effectively pursuing the same "uncollectible judgment" against CMGT that Plaintiff now claims SC did not want. SC ultimately obtained a $17 million default judgment against CMGT based on SC's testimony that, if CMGT had followed SC's advice, (a) CMGT promptly would have obtained $2.5 million in financing; (b) within two years, CMGT would have been successful and worth almost $200 million; and (c) CMGT then would have done an IPO, CMGT would have hired SC to do the IPO, and SC would have received more than $16.5 million therefrom. Although the California judge noted that SC's purported damages were contingent on events that had not yet occurred[2], he nevertheless entered the default judgment against CMGT, apparently

---

[2] Judge Kendall also noted that "it appears to this Court that the majority of the [default judgment] is based upon nothing more than the speculation of [SC's] principle, Gerry Spehar." Dock. No. 49, Memorandum Opinion and Order at 3, n.1, June 28, 2007.

expecting SC would never collect it. Notably the judge stated at the end of the hearing, "[t]hey will set it aside, walk away from the company or they will go bankrupt. It's one of those three things that will happen." TR. 2/26/04, Ex. C at 7.

Using the default judgment to create creditor status, SC next filed a single-creditor involuntary bankruptcy against CMGT. During this time, Plaintiff could have sought a vacation of the default judgment, as the California Judge anticipated, however Plaintiff failed to do so.

### 3.     The Malpractice Action

Instead, SC and Plaintiff agreed to sue Defendants for malpractice for their representation of CMGT in the lawsuit against SC. SC agreed to advance the costs of litigation and CMGT agreed that SC would acquire up to 90% or more of any net recovery (i.e., after payment to Plaintiff's contingent fee lawyers). According to Defendants, in pleading this malpractice claim, Plaintiff and SC must essentially prove that SC had no right to recovery in the California Action, i.e., that if Defendants had simply appeared and defended CMGT in the California Action, then CMGT would have without doubt defeated SC's claims.[3]

_____

[3]Plaintiff now argues in the present lawsuit that if Defendants would have appeared in the Spehar Lawsuit, they would have defeated SC's injunction because they "could have convinced the California court to condition injunctive relief on SC paying a bond (and SC could not afford such a bond)."

Herein lies the extraordinary situation of this case. Arguably, if SC had a legitimate claim against CMGT, then Defendants would not have caused any loss by failing to defeat the meritorious claim, and Plaintiff's malpractice claim should accordingly fail. If SC had no legitimate claim against CMGT, then Plaintiff should prevail on his malpractice claim. But if Plaintiff prevails, SC would recover from CMGT's lawyers because of its very same meritless claim. If Plaintiff wins, the result would be that a party with a meritless claim - and who forced CMGT into bankruptcy by asserting it - would be rewarded with a multi-milion dollar recovery for having done so.

### 4. Judge Kendall's Order to Conduct Limited Discovery on the Unclean Hands Issue

It was precisely this seemingly unjust scenario that led Judge Kendall to state in open court that this is a "very odd case" that presents "a very unique situation," and that Defendants' allegation of unclean hands is "extremely persuasive." In fact, it was because of the suspicious nature of this case that Judge Kendall ordered the parties to conduct limited discovery on the "unclean hands" issue.

At the hearing where she entered this order, Judge Kendall made several statements regarding her concerns about Plaintiff's intentions for filing this case. She states,

> "I find [D]efendant's position extremely persuasive, . . . there is a question
> lurking about why this was handled in the way it was and issues as to the
> trustee's position in coming forward and being paid by this entity, issues
> regarding why the trustee didn't go in and move to vacate the dismissal, and
> I think what we need to do is we need to do discovery solely on that, what I
> would call, unclean hands issue first, so that I can have facts in front of me
> and decide whether the case should be dismissed based upon that issue. It's

11

a fact dispute that I'm having the problem with. I think there are disputed issues of fact that I can't get rid of this on a dismissal, but I find your argument extremely persuasive. It is a very unique situation. It's a very odd case."

Tr. 10/30/07, Pl. Motion, Ex. 2 at 2-3.

At the hearing regarding Plaintiff's motion for a protective order, Judge Kendall further stated, "I don't understand why the at issue response isn't something that - you've put this into play filing this lawsuit. We need to address whether or not this is going to be a situation of unclean hands or not." TR. 12/13/07, Pl. Motion, Ex. 4 at 5. She further states,

"Unclean hands could cover your behavior throughout the whole period of time. It's really getting to the issue as to what was the motivation for the filing of the lawsuit, all of the steps leading up to the failure to move to dismiss this suit could potentially show intent or a pattern of behavior or some theory by the defendants as to why this would be unclean hands."

*Id.* at 6. Moreover, when Plaintiff's attorney argued that Defendants made a baseless accusation, and that "all that happened here is they accused my guy of bad faith . . . there's no evidence of bad faith," Judge Kendall responded by telling the attorney, "you need to get off the baseless accusation, otherwise I wouldn't have ordered the discovery." *Id.* at 9. She refers to the unclean hands issue on which she ordered the parties to conduct discovery as "my issue," that is "broader than the way the plaintiffs have narrowly defined it." *Id.* at 13.

### 5.     At-Issue Waiver Under Illinois Law

Typically, attorney-client privilege may be waived if an otherwise privileged communication is put "at issue" by a party who is a holder of the privilege. Under Illinois law, an at-issue waiver occurs where the sought after material is either the basis of the lawsuit or the defense thereof. *Fischel & Kahn,* 703 N.E.2d 634 (Ill. App. Ct. 1998). It is not sufficient that a party merely deny an allegation, or that the documents are relevant to the

claim. *Dexia Credit Local v. Rogan,* 231 F.R.D. 268, 276 (N.D. Ill. 2004) (interpreting Illinois appellate cases). Rather, communications are waived only when the litigant directly puts the attorney's advice at issue in the litigation. *Estate of Wright,* 2007 WL 4302722 (Ill. App. Ct. 2007). This at-issue waiver also applies to those documents otherwise protected by the work product doctrine. *A.O. Smith Corp. v. Lewis, Overbeck & Furman,* 1991 WL 192200 (N.D. Ill. 1991); *Abbott,* 200 F.R.D. at 411.

### 6. Judge Kendall's Orders Put The Documents "At Issue."

The traditional at-issue waiver analysis under Illinois law, however, is not relevant in this particular matter because Judge Kendall placed the pre-filing communciations between Plaintiff, his counsel, and Spehar at issue. In this case, Judge Kendall ordered the parties to conduct limited discovery on the specific issue of unclean hands. She repeatedly expressed in open court her concerns regarding Plaintiff's intentions for filing this lawsuit, and intended the parties to conduct discovery on Plaintiff's reasons for filing this lawsuit.

Most of the documents included on Plaintiff's privilege log contain pre-filing communications between Plaintiff, his counsel, and/or Spehar. These communications contain information relating to Plaintiff's basis for filing this lawsuit. They contain the opinions of Plaintiff, his counsel, and Spehar regarding the strengths and weaknesses of the case and their decisions regarding whether to file the lawsuit. This appears to be exactly the type of information Judge Kendall intended the parties to discover, in order to resolve the issue of whether Plaintiff filed this lawsuit in good faith. Judge Kendall placed these communications at issue when ordering the parties to conduct discovery on Plaintiff's

decision to file the lawsuit. Thus, any privileges that would have otherwise attached to documents containing such communications have been waived. Accordingly, most of the documents contained in Plaintiff's privilege log are at issue and have thus been waived. The Court finds the documents containing post-filing communications between the respective parties, however, have not been placed at issue, and thus any privileges attached to these particular documents have not been waived by the at issue waiver.[4]

The Court emphasizes that this is a narrow holding applicable only to the unique circumstances of this case. This holding should not be read to apply to every case where a party accuses the opposing party of filing a lawsuit in bad faith. Rather, where a district court judge explicitly directs discovery to proceed regarding a party's behavior and motivation, it is not for this Court to second guess the decision, but instead to help faciliate the discovery on that issue.

### 7. Plaintiff Did Not Put the Documents "At Issue" Under Illinois Law.

Alternatively, in the interests of completeness, the Court analyzes the issues assuming it was not Judge Kendall's intention to put the relevant documents "at issue" by ordering the parties to conduct discovery on the unclean hands issue. On this basis, the Court applies the traditional at-issue waiver analysis under Illinois law. In doing so, the Court finds that

---

[4] These are Trustee Produced Documents No. 30, Spehar Produced Documents Log Nos. 3-6, 32-45, 48, and 50, and Received from Spehar Documents Log Nos. 2-6, 13. As stated below, the Court finds these documents are protected by the work product doctrine. *See* Part III.C.4 (finding the documents containing post-filing communications protected under the work product doctrine).

Plaintiff has not put the relevant documents at issue.

Defendants argue that Plaintiff placed his pre-filing investigations and his "good faith" belief that he has a legitimate malpractice claim at issue, thus waiving any attorney-client or work product privileges over the relevant documents. Plaintiff, however, asserts that he only did so in the context of denying Defendants' allegations of fraud on the court and unclean hands. He argues that under Illinois law, in order for the at-issue waiver to apply, Plaintiff must actually use evidence in support of these assertions, which he did not do.

Defendants first accused Plaintiff's lawsuit of being a fraud on the judicial system in its motion to dismiss. Plaintiff responded by stating that it was his decision to file the case. In Defendant's motion to reconsider, Defendants argued that SC is the true party in interest. In response, Plaintiff stated that if "he is not a participant in the purported fraud, and if he filed the case with a good faith belief, then the case cannot be a fraud." Def. Resp., Ex. F. Plaintiff also stated that if he "decided to file the case because he believes the claims against Defendants are meritorious (which he did) then this case cannot be a fraud." Def. Resp., Ex. F. Plaintiff contends these statements were only made to clarify the elements of fraud and Defendants burden of proof. Later, in Plaintiff's motion for a protective order, he stated that at the conclusion of his and his attorneys' pre-lawsuit investigation, Plaintiff concluded that meritorious claims exist. Plaintiff contends that these statements were not made in defense of Defendants' allegations, but rather were merely made to provide the Court with background to the motion.

The at-issue waiver applies only if a party uses privileged communications to defend

itself or attack its opponents. Here, Plaintiff has affirmatively stated that his pre-filing investigations and that of his attorneys led him to file this suit in good faith. Plaintiff has not, however, referred to specific documents or communications between himself and his attorney to support this assertion. If Plaintiff "used" the privileged communications to support his assertions, however, then he has waived the privilege.

Not all of the documents relating to Plaintiff's pre-filing investigations are necessarily privileged. However, any notes that his attorneys took during the course of the investigation, or communication exchanged between them, would be privileged by attorney-client privilege or the work product doctrine. As stated above, a party does not waive a privilege merely by denying the opposing party's allegations of bad faith. *Claffey v. River Oaks Hyundai,* 486 F. Supp. 2d 776, 777 (N.D. Ill. 2007). But where a party relies or intends to rely on the adequacy of the attorney's investigation, the investigation made by the attorney including any statements made by witnesses to that attorney become discoverable. *See Am. Nat. Bank & Trust Co.* v. *Allmerica Fin. Life Ins. & Annuity Co.,* 2005 U.S. Dist. Lexis 14254 (N.D. Ill., July 14, 2005).

For example, the fact that a party's state of mind theoretically might have been affected by advice of legal counsel does not put the privilege at issue, unless the party uses advice of counsel to support its position. *Claffey,* 486 F. Supp. 2d at 778. In *Claffey*, the party argued that it maintained reasonable procedures and thus did not act willfully. *Id.* However, the party's statement that it did not intend to use the privileged communications to support its argument was not enough for the Court to determine that the party had not put it at issue.

*Id.* Rather, the Court said if the party actually relies on any documents or other evidence that tends to suggest that its "procedures" included consultation with counsel, it will be deemed to have waived its attorney-client privilege. *Id.* Having drawn the line, the *Claffey* court permitted counsel to make a final determination of what it intends to use at trial. *Id.*

Likewise, in *Lorenz,* the Seventh Circuit found that Plaintiff had not put its privileged communications at issue where it had not injected a new factual or legal issue in the case, such as reliance on the advice of counsel. *Lorenz v. Valley Forge Insurance Co.,* 815 F.2d 1095, 1098 (7th Cir. 1987). Applying Indiana law, which appears to be similar to Illinois law, the Court found the party did nothing more than deny the plaintiff's allegations that it acted improperly. *Id.*

A waiver of the attorney-client privilege occurs only when the party to whom the privilege belongs affirmatively puts at issue the specific communications, documents, or information to which the privilege attaches. *Dexia,* 231 F.R.D. 268 at 275-76 (finding Illinois law similar to federal law in *Beneficial v. Franchise Co., Inc. v. Bank One*, 205 F.R.D. 212 (N.D. Ill. 2001)). In *Dexia,* because the party did not use or selectively disclose privileged information, the Court found it did not waive the privilege. *Id.* at 276.

Therefore, if Plaintiff wishes to use documents or other privileged communications from its pre-filing investigations to show that he filed the lawsuit in good faith, then he will waive the privilege. Plaintiff asserts, however, that he does not intend to use such communication to defend these allegations. Therefore, because Plaintiff has not yet used specific communications to defend the allegations, and because Plaintiff states he does not

intend to do so, the Court finds  Plaintiff has not yet put these privileged communications at issue, and has accordingly not waived any communications that are otherwise protected by attorney-client privilege or the work product doctrine. Having now drawn the line, this Court gives Plaintiff the opportunity to decide how he intends to proceed.

**B.      DOCUMENTS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE**

As stated above, because the Court finds that Judge Kendall intended to place the pre-investigation documents at-issue, the attorney-client and work product privileges do not protect those documents from being disclosed.  If, however, it was not Judge Kendall's intention to place the documents at issue, then, having found that Plaintiff did not place the documents at issue, the Court proceeds with its analysis of whether the attorney-client or work product privileges protect these documents from being disclosed.

Plaintiff asserts that several of the documents contained in its privilege log are protected by the attorney-client privilege and should therefore not be disclosed. Defendants, however, argue that Plaintiff waived its privilege for those documents that it shared with SC and SC's attorneys.

1. **Plaintiff Waived the Attorney-Client Privilege for the Memoranda prepared by Plaintiff's Attorneys for Plaintiff that were shared with SC and, in some instances, SC's attorneys. (Trustee Produced Log Nos. 4, 21, 34, & 109; Received from Spehar Log No. 9**).

Any memoranda prepared by an attorney for a client regarding legal advice is privileged under the attorney-client privilege. Generally, a party waives the attorney-client privilege when the otherwise privileged documents are disclosed to a third party. *Fischel*, 703 N.E. 2d at 636-37. However, the privilege is not waived when the parties are linked by a common interest. *Dexia*, 231 F.R.D. at 272.

The legal principles governing application of the common interest doctrine appear to be the same under Illinois and Federal law. *Id.* at 273. Under the common-interest doctrine, when two or more individuals jointly consult an attorney regarding a mutual concern, their confidential communications with that attorney, although known to each other, will be privileged in the controversy of either or both of the individuals with the outside world. *Id.* at 272-73. "The purpose of the common interest doctrine is to 'foster communication' between parties that share a common interest and to 'protect the confidentiality of communications where a joint effort or strategy has been decided upon or undertaken by the parties and their respective counsel." *Id.* at 273. It generally applies to "any parties who have a 'common interest' in current or potential litigation, either as actual or potential plaintiffs or defendants." *Id.* In order to maintain the privilege, "the common interest must relate to a litigation interest, not merely a common business interest." *Id.* Whether the common interest doctrine applies to a privileged document "depends upon the reason for disclosure, and not when the document was created." *Id.* The common interest rule is not limited to parties who

are perfectly aligned on the same side of a single litigation, rather the party asserting the privilege must simply demonstrate actual cooperation toward a common legal goal with respect to the documents they seek to withhold. *Id.* However, this shared interest must be identical, not simply similar. *Id.* Before asserting the doctrine, however, the parties must first establish that the underlying documents withheld were otherwise privileged before the common interest doctrine arose. *Id.* Once such a privilege is established, the party asserting the privilege then has the burden of proving the common interest. *Id.*

Plaintiff asserts that he did not waive attorney-client privilege when the documents were shared with SC and SC's attorney because SC and its attorneys share a common interest with Plaintiff. SC is the creditor of CMGT's estate, and by agreement, will receive a substantial percentage of the damages awarded to Plaintiff in this lawsuit if he prevails. Plaintiff asserts that as a result, SC shares a common interest in Plaintiff prevailing in this lawsuit. Defendants, however, assert that the interest shared does not fall within the "common interest doctrine," as SC does not have the necessary legal interest in the case, but rather only has a financial interest in Plaintiff's case.

In *Dexia,* Dexia and EMC were found to have shared a common interest under the Doctrine. *Dexia,* 231 F.R.D. at 274. *See also, Dexia Credit Local v. Rogan*, 231 F.R.D. 287 (N.D. Ill. 2005). Dexia was the creditor of EMC's estate, and pursued claims on behalf of EMC, who had claims against the defendants. *Dexia,* 231 F.R.D. 268, 271 (N.D. Ill. 2004). Dexia and EMC had a funding agreement that if Dexia achieved recovery on the claims, then Dexia would retain 85% of the recovery. *Id.*

Unlike *Dexia,* in this case, SC is the creditor to CMGT's estate. Plaintiff is bringing the legal malpractice claim on behalf of CMGT's estate, but not on behalf of SC. SC does not have any claims against Defendants. SC and CMGT's estate do have a funding agreement that SC will get a percentage of the proceeds from Plaintiff's award if he prevails. But unlike *Dexia,* where EMC's estate was directly involved in the claims against the defendants, SC is not involved in the claims against Defendants, beyond having been the opposing party in the suit for which Plaintiff bases his legal malpractice claims. Thus, it appears that SC and CMGT have a joint financial interest rather than a joint legal interest. The only interest SC has in the litigation is that it hopes it wins so that it can get money, not because it has an actual legal interest in any of the claims. "It is the common legal interest, not business interest, that is central to the application of the common interest doctrine." *Dexia*, 231 F.R.D. 287, 294 (N.D. Ill. 2005).

In *Dexia,* the parties shared a common litigation interest in pursuing claims against the defendants, where the attorney represented both Dexia and EMC. *Dexia,* 231 F.R.D. at 274. Here, on the other hand, Plaintiff's attorney does not also represent SC, and both Plaintiff and SC do not have claims against Defendants. In fact, it is more logical to conclude that SC would have a legal interest in Defendants prevailing in the suit, as it might affirm their basis for initially bringing their lawsuit against CMGT. If the Court adopts Plaintiff's assertion, that the common interest doctrine applies whenever one has a financial interest in the outcome of a case, then the doctrine would apply to privileged documents disclosed by a trustee to any bankruptcy creditor. Plaintiff has not put forth any authority supporting such

a rule, nor does the Court read *Dexia* as calling for such a broad rule. Thus, because SC only has a financial interest in this case, but does not share a common litigation interest, the Court finds that the common interest doctrine does not apply to Plaintiff's attorney's communications with SC or SC's attorneys. Accordingly, any otherwise privileged communications between Plaintiff and his attorney that were shared with SC or SC's attorneys are deemed waived. Therefore, the documents in this category are no longer protected by the attorney-client privilege because they have been waived.

**2.  Plaintiff Waived the Attorney-Client Privilege for the Correspondence between Plaintiff and his Attorneys that were shared with SC and, in some instances, SC's Attorneys (Trustee Produced Log Nos. 4, 33, 34, 37, 38, 55, &109; Received from Spehar Log No. 14).**

The documents in this category are also no longer protected by the attorney-client privilege. Although the communications contained in these documents otherwise fall within the privilege, they have been disclosed to a third party - SC or SC's attorneys. For the same reasons stated above, SC and his attorneys' do not share a common legal interest with Trustee, and thus the common interest doctrine does not apply to these documents. Accordingly, Plaintiff has waived any attorney-client privilege that would have otherwise protected these documents.

**3.    Correspondence between Plaintiff and his Attorneys that were not Shared are Protected by the Attorney-Client Privilege. (Trustee Produced Log Nos. 2, 3, 5 - 8, 15, 18 - 20, 30, 36, 46 - 53, & 56 - 65)**

The documents in this category are protected by the attorney-client privilege, and Plaintiff has not waived this privilege. The documents in this category contain communications between Plaintiff and his attorneys about this case, or communications between the attorneys about this case. None of the documents have been disclosed to a third party, thus Plaintiff has not waived the privilege. Accordingly, the documents in this category are protected by the attorney-client privilege, and Plaintiff need not produce them.

**C.    DOCUMENTS PROTECTED BY THE WORK PRODUCT DOCTRINE**

Plaintiff also asserts that several of the documents contained in its privilege log are protected by the work product doctrine. Defendants argue, however, that Plaintiff should still produce these documents because they have a substantial need for them. The Court first addresses whether the documents are protected by the work product doctrine. Then, the Court addresses whether Defendants have a substantial need for the documents such that they should still be produced.

**1.    Plaintiff's Attorneys' Handwritten Notes and Internal Memoranda (not shared with anyone) are protected under the Work Product Doctrine (Trustee Produced Log Nos. 1, 9 - 11, 13, & 68 - 74).**

The documents in this category are protected by the work product doctrine. The documents in this category were prepared by Plaintiff's attorneys in anticipation of this litigation and contain the mental impressions and thoughts of the attorneys. None of these documents were disclosed to a third party, and thus Plaintiff has not waived the protection of this doctrine. Thus, these documents are protected by the work product doctrine, and need

not be produced.

> **2.** **Memoranda Prepared by Plaintiff's Attorneys that were Shared with SC and, in some instances, SC's Attorneys are protected under the Work Product Doctrine (Trustee Produced Log Nos. 4, 12, 14, 21, 34, 45, 83, & 109; Spehar produced Log No. 7; Received from Spehar Log Nos. 1, 9, 25 & 26).**

The documents in this category also constitute work product, as they were prepared by Plaintiff's attorneys in anticipation of this litigation. Most of the documents contain the thoughts and mental impressions of the attorneys, including the attorneys' evaluation of the case. The documents include memorandum to the client and other attorneys, attorneys' notes, and drafts of pleadings. All of these documents, however, were also disclosed to a third party, SC or SC's attorneys.

The work-product doctrine is also subject to waiver by a party. *Vardon Golf Co., Inc.* v. *Karsten Mfg. Corp.,* 213 F.R.D. 528, 534 (N.D. Ill. 2003). Such a waiver occurs "when the protected communications are disclosed in a manner which substantially increases the opportunity for potential adversaries to obtain the information." *Id.* Therefore, in determining if a party's actions constitute a waiver, the Court should focus on whether the information is disclosed to an adversary, rather than whether the disclosure is voluntary. *Id.*

SC was CMGT's former adversary in the previous California lawsuit on which Plaintiff bases this current lawsuit. In this case, however, SC is not a defendant, nor is it a potential defendant. In fact, because SC will recover a monetary award if Plaintiff prevails in this lawsuit, it is in SC's interests for Plaintiff to win the lawsuit. Thus, for the purposes of this lawsuit, SC is not considered an adversary. Accordingly, although Plaintiff voluntary disclosed these documents to SC, because SC is not an adversary in this lawsuit, Plaintiff did

not waive his protection under the work product doctrine. Therefore, the documents in this category are protected by the work product doctrine, and need not be produced.[5]

> **3.** **Memoranda and Correspondence prepared by SC (or SC's attorney) for Plaintiff and/or Plaintiff's Attorneys before the Complaint was Filed are Protected under the Work Product Doctrine. (Trustee Produced Log Nos. 16-17, 22-28, 31-32, 35, 39-45, 66-67, 75-82, 84-108, & 110-114; Spehar Produced Log Nos. 1-2, 8-31, 46-47, 49, & 51; Received from Spehar Log Nos. 7-8, 10-12, & 15-28).**

The documents contained in this category were prepared in anticipation of this litigation, but were not prepared by Plaintiff or his attorneys. Rather, the documents were prepared by SC or SC's attorneys. The documents contain the mental impressions, thoughts and legal theories of SC, SC's attorneys, Plaintiff and/or Plaintiff's attorneys. Although SC is not a party to this lawsuit, it did prepare the materials in order to aid in this litigation. As stated above, under the work product doctrine, the person preparing the materials may be any representative of the client, so long as the primary motivating purpose behind the creation of the documents is to aid in possible future litigation. *See Martin v. Bally's Park Place Hotel & Casino,* 983 F.2d 1252 (3d Cir. 1993) (applying the work product doctrine to documents prepared by an environmental consultant); *See Westhemeco Ltd. v. New Hampshire Ins. Co.,* 82 F.R.D. 702 (S.D.N.Y. 1992) (applying the work product protection to documents prepared by the defendant's investigator). Thus, although SC or its attorneys prepared these documents, because they did so to assist Plaintiff with this litigation, the

---

[5]The Court has also held that Plaintiff waived the attorney-client privilege as it relates to some of these documents. *See supra* discussing Trustee produced log numbers 4, 21, 34 and 109 and Received from Spehar Log Number 9. Although these documents were not protected under the attorney-client privilege, they are protected under the work product doctrine, and thus need not be produced.

documents are still protected by the work product doctrine. Accordingly, Plaintiff need not produce these documents.

4.      **Memoranda and Correspondence prepared by SC for Plaintiff and/or Plaintiff's Attorneys after the Complaint was filed are Protected by the Work Product Doctrine. (Spehar Produced Log Nos 3-6, 32-45, 48, 50; Received from Spehar Log Nos. 2-6, 13).**

For the same reasons as stated above, the documents in this category are also protected by the work product doctrine. Even though these documents were prepared by SC, they were still prepared for the purpose of assisting Plaintiff with this litigation. The documents contain the legal theories and mental impressions of SC, Plaintiff, or Plaintiff's attorney. Thus, the documents in this category are protected by the work product doctrine and need not be produced. Moreover, because these documents were created after the complaint was filed, they do not involve Plaintiff's pre-filing investigation, and are thus not relevant to the unclean hands issue. Accordingly, Plaintiff need not produce these documents.

5.      **Correspondence between Plaintiff and his Attorneys that were shared with SC and, in some instances, SC's Attorneys, are Protected by the Work Product Doctrine (Trustee produced Log Nos. 4, 29, 33-34, 37-38, 54-55, & 109; Received from Spehar Log No. 14).**

The documents in this category are also protected by the work product doctrine. These documents were prepared by Plaintiff or his attorneys in anticipation of this litigation. They contain correspondence between Plaintiff and his attorneys, and include their thoughts and mental impressions of the case. Although these documents were disclosed to SC or SC's attorneys, for the reasons stated above, because SC is not Plaintiff's adversary in this lawsuit, Plaintiff did not waive the privilege under the work product doctrine. Accordingly, the

documents in this category are privileged and need not be produced.[6]

**6.    Correspondence between Plaintiff and his Attorneys that were not shared are protected by the Work Product Doctrine. (Trustee produced Log Nos. 2-3, 5, 15, 30, 48, 50, 56-57, & 60-61).**

The documents in this category are also protected under the work product doctrine. The documents were prepared by Plaintiff or his attorneys in anticipation of this litigation, and were not shared with any third parties. Accordingly, the documents in this category need not be produced.

**7.    Defendants have not demonstrated the requisite substantial need for these documents such that they should be discovered.**

As stated above, "ordinary" or "fact" work product may be discoverable only if, after the party asserting the protection establishes the necessary elements, the party seeking discovery of the documents demonstrates a substantial need for the information and that it would be exceedingly difficult to obtain the information any other way. *Caremark,* 195 F.R.D. at 616. In determining whether the party seeking discovery has shown the requisite need, courts will consider the nature of the information sought, the extent to which the information would reveal the attorneys' mental processes, the likely reliability of the information, the degree of danger that the attorney-client relationship would be disrupted, and the availability of alternative sources of the needed information. *In re Grand Jury Subpoena Dated Nov. 8, 1979,* 622 F.2d 933, 936 n.3 (6th Cir. 1980). Opinion work product,

---

[6]The Court has also held that Plaintiff waived the attorney-client privilege as it relates to some of these documents. *See supra* discussing Trustee produced log numbers 4, 33-34, 37-38, 55 and 109 and Received from Spehar Log Number 14. Although these documents were not protected under the attorney-client privilege, they are protected under the work product doctrine, and thus need not be produced.

on the other hand, which reveals the mental impressions or opinions of an attorney, is even more scrupulously protected and is thus generally not discoverable. *Caremark,* 195 F.R.D. at 616. The Supreme Court, however, has not stated that this immunity is absolute, and the Seventh Circuit has indicated, in dicta, that under some circumstances, opinion work product may be discoverable. *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 n.4 (7th Cir. 1996). However, courts give a heightened protection to an attorney's mental impressions and opinions. *Id.* Documents that detail an attorney's impressions of the strengths and weaknesses of a case are nearly, without exception, protected under the work product doctrine. *Caremark,* 195 F.R.D. at 616.

In *Logan,* for example, the Court held that the plaintiff failed to demonstrate a substantial need for the documents sufficient to overcome the work product privilege for ordinary work product. *Id.* at 977. The Court stated that a "mere allegation of bad faith is insufficient to overcome the work product privilege." *Id.* Rather, "the plaintiff must demonstrate some likelihood or probability that the documents sought may contain evidence of bad faith." *Id.* The plaintiff only needs to show the possibility, not the certainty, that the documents contain evidence of bad faith. *Id.* The District Court in this case conducted an *in camera* review of the documents and concluded that they did not contain any evidence of bad faith. *Id.*

In this case, Defendants have put forth a strong enough allegation of bad faith to persuade Judge Kendall to order limited discovery on this unclean hands issue. However, while the Court has allowed such discovery to take place, it has not ruled that the specific documents at issue are likely to contain evidence of bad faith. Most of the documents sought

by Defendants are relevant to the unclean hands issue as they involve Plaintiff's pre-filing investigations. However, most of them also contain the mental impressions, thoughts, and legal theories of Plaintiff and his attorney, including their evaluation of the strengths and weaknesses of the case. Thus, because most of the documents are opinion work product, Defendants must demonstrate an even greater need for the documents.

Defendants have not referred to any particular document(s) of which they are in need, but rather seek any and all documents relating to Plaintiff's pre-filing investigation. *See Jaffee Pension Plan v. Household Int'l Inc.,* 244 F.R.D. 412 (N.D. Ill. 2006) (finding that substantial need and undue hardship required production of a particular document otherwise considered "fact" work product). Moreover, Defendants might be able to obtain evidence regarding this issue elsewhere. Although Defendants argue that the depositions of Plaintiff and SC might not provide the necessary evidence given their respective roles in this case, Defendants still have the opportunity to depose them. In addition, Defendants may still depose the CMGT shareholders as it intends to do, and may obtain such evidence from those sources. Plaintiff has also disclosed documents relating to its agreement with SC that were not otherwise privileged. Furthermore, although the Court recognizes that the opinions of Plaintiff and his counsel are relevant to the unclean hands issue, disclosing these communications to Defendants would give them a free look into the legal strategies of their adversaries, and thus could be detrimental to Plaintiff's position in the case. Weighing all of these factors, the Court finds that Defendants have not demonstrated the requisite sufficient need for the documents to overcome the work product doctrine. Therefore, Plaintiff need not disclose the documents in the above categories protected under the work product doctrine.

## IV. CONCLUSION

Based on this Court's interpretation of the proceedings before Judge Kendall, the Court finds that Judge Kendall has placed Plaintiff's pre-filing communications between himself, his counsel, and Spehar at issue, and these documents are thus not protected by the attorney-client or work product privileges. Accordingly, the documents must be produced to Defendants. (Trustee Produced Log Nos. 1 –114; Received from Spehar Log Nos. 1, 7-12, 14-28; and Spehar Produced Log Nos. 1-2, 7-31, 46-47, 49, & 51). On the other hand, Plaintiff's post-filing communications were not placed at issue, and are protected under the work product doctrine. (Trustee Produced Log No. 30, Spehar Produced Log Nos. 3-6, 32-45, 48, 50; Received from Spehar Log Nos. 2-6, 13). **Thus, for the reasons set forth in this opinion, Plaintiff's motion for a protective order is denied in part and granted in part.**

Alternatively, if it was not Judge Kendall's intention to place the pre-filing communications at issue, then the Court finds that under Illinois law, Plaintiff did not place these communications at issue, and accordingly did not waive the attorney-client or work product privileges under the at-issue waiver doctrine. (Trustee Produced Log Nos. 1-114; Received from Spehar Log Nos. 1-28; Spehar Produced Log Nos. 1-51). The Court finds Plaintiff waived its attorney-client privilege over several of its documents by sharing them with SC and SC's attorneys. However, the Court also finds these documents are still protected under the work product doctrine, and thus need not be disclosed. (Trustee Produced Log Nos. 4, 21, 33-34, 37-38, 55 and 109 and Received from Spehar Log Nos. 9, 14.) The Court finds the remainder of the documents are also protected by either attorney-client

30

privilege or the work product doctrine, and Plaintiff has not waived these privileges. (Trustee Produced Log Nos. 1-3, 5-20, 22-32, 35-36, 39-54, 56-108, 110–114; Received from Spehar Log Nos. 1-8, 10-13, 15-28; and Spehar Produced Log Nos. 1-51)

**SO ORDERED THIS 9th DAY OF JUNE, 2008.**

_____

**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

Edward T. Joyce
Robert D. Carroll
Edward T. Joyce & Associates P.C.
Eleven South LaSalle Street, Suite 1600
Chiago, IL 60603

Counsel for Plaintiff

Stephen Novack
Novack & Macey
100 North Riverside Plaza, Suite 1500
Chicago, IL 60606

Counsel for Defendants