IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID GROCHOCINSKI, not individually, but solely in his capacity as the Chapter 7 Trustee for the bankruptcy estate of CMGT, INC., <br><br> Plaintiff, <br> v. <br><br> MAYER BROWN ROWE & MAW LLP and RONALD B. GIVEN, <br><br> Defendants. | Case No. 06 C 5486 <br><br> Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

David Grochocinski ("Grochocinski"), in his capacity as Chapter 7 Trustee for the bankruptcy estate of CMGT, Inc. ("CMGT") sued Mayer Brown Rowe & Maw LLP ("Mayer Brown") and Ronald B. Given ("Given"), an attorney at Mayer Brown, (collectively "the Defendants") for legal malpractice. On March 31, 2010, this Court granted the Defendants' Motion for Summary Judgment and entered final judgment. Non-party Gerard Spehar ("Spehar") now moves pursuant to Federal Rule of Civil Procedure 24 to intervene and pursuant to Federal Rule of Civil Procedure 59(e) to alter and amend the judgment. For the reasons stated below, the Court denies Spehar's Motion to Intervene and dismisses his Motion to Alter and Amend as moot.

**BACKGROUND**

Spehar seeks to intervene in a lawsuit that began in August of 2006. On that date, Grochocinski sued the Defendants in state court in Illinois, alleging legal malpractice arising from the Defendants' failure to appear and defend CMGT in a lawsuit in California. The Defendants removed the case to this Court and, on November 30, 2006, moved to dismiss the Complaint, arguing, among other things, that Spehar Capital ("SC"), Spehar's venture capital consulting firm,

orchestrated a fraud on the judicial system. Specifically, the Defendants argued that SC filed a meritless suit against CMGT in California, obtained a Temporary Restraining Order that prevented CMGT from obtaining financing, secured a "bogus" default judgment, used the default judgment to file a single-creditor involuntary bankruptcy action against CMGT, and then "orchestrated and funded" the filing of this malpractice suit. This Court initially rejected the Defendants' argument, concluding that the Defendants had failed to demonstrate that Grochocinski himself had perpetrated fraud on the judicial system. (R. 49.) Nevertheless, upon denying the Defendants' Motion to Reconsider, the Court stated that it found the Defendants' position as to "fraud on the Court" or "unclean hands" persuasive. (R. 67; Transcript of Oct. 30, 2007 hearing at 2:22-25.) As a result, the Court ordered the parties to engage in limited discovery on the "unclean hands" issue and, if appropriate, file a motion for summary judgment on this issue. (Tr. at 7:23-8:2.) Following discovery, the Defendants moved for summary judgment on their "unclean hands" defense. The Court granted the Defendants' Motion on March 31, 2010 ("the March 2010 Opinion") and entered final judgment in their favor. (R. 171, 172.)

On April 28, 2010, Spehar moved both to intervene and to alter and amend the judgment. The next day, Grochocinski filed a Notice of Appeal and subsequently moved the Seventh Circuit Court of Appeals to stay his appeal pending this Court's resolution of Spehar's Motions to Intervene and to Alter or Amend. (R. 175; No. 10-2057, R. 2.) On May 13, 2010, the Seventh Circuit granted Grochocinski's Motion to Stay pending this Court's resolution of Spehar's Motion to Intervene. (R. 192; No. 10-2057, R. 5.) The Seventh Circuit ordered that all proceedings in the appeal be held in abeyance until this Court ruled on the Motion to Intervene. (R. 192; No. 10-2057, R. 5.) The Seventh Circuit construed the Defendants' Response—filed the same day as the Seventh Circuit's

order—as a Motion to Reconsider and denied the Defendants' Motion on June 22, 2010. (No. 10-2057, R. 10.) In its Response, the Defendants had argued that this Court no longer had jurisdiction over Spehar's Motions to Intervene and to Alter or Amend because Grochocinski had filed a Notice of Appeal. (No. 10-2057, R. 7.)

Spehar moves to intervene in this case as a matter of right to protect his personal and professional reputation, his ability to earn a living, and his Chartered Financial Analyst ("CFA") credential. In the alternative, he moves for permissive intervention. Spehar contends that he earns his living as a financial consultant and that his "ability to attract and retain clients materially depends on [his] good name and professional reputation." (R. 173 at 2.) According to Spehar, this Court's March 2010 Opinion "scaths [his] good name and reputation," and will undoubtably influence his current or potential clients, making it impossible for him to earn a living. (R. 173 at 2.) Further, Spehar asserts that if it is not altered, the March 2010 Opinion "will almost certainly cause the loss of [his] CFA credential." (R. 173 at 3.) Spehar's Motion to Alter or Amend challenges the factual findings in the Court's March 2010 Order and contends, at the very least, that there are factual disputes that cannot be resolved on summary judgment.

## DISCUSSION

### I. Jurisdictional Argument

Before reaching the merits of Spehar's Motions, the Court must address the Defendants' jurisdictional argument. The Defendants argue that the Court lacks jurisdiction to rule on Spehar's Motions because, once Grochocinski filed his Notice of Appeal, this Court was stripped of its jurisdiction over all "aspects of the case involved in the appeal." (*See* R. 200 at 3 (citing *May v. Sheahan*, 226 F.3d 876, 879 (7th Cir. 2000).) The Defendants are correct that the filing of a notice

of appeal typically "divests the district court of its control over those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), including its ability to consider a motion to intervene. *See Roe v. Town of Highland*, 909 F.2d 1097, 1100 (7th Cir. 1990) (filing a notice of appeal at the same time as a motion to intervene divested the district court of its jurisdiction over the case); *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 928 (5th Cir 1983) ("[T]he filing of a valid notice of appeal deprives the district court of jurisdiction to consider motions for intervention."). Here, however, the Seventh Circuit has stayed all proceedings on appeal pending this Court's resolution of Spehar's Motion to Intervene and it rejected the Defendants' jurisdictional argument in its June 22, 2010 ruling. Thus, having been directed by the Seventh Circuit to rule on Spehar's Motion to Intervene, and there being no fear of duplication of efforts, the Court proceeds to the merits of Spehar's Motions. *See*, *e.g.*, *Rolle v. New York City Hous. Auth.*, 294 F. Supp. 574, 576 (S.D.N.Y 1969) (recognizing an exception to the general jurisdictional rule where the district court has "authorization from the Court of appeals"); *Hobson v. Hansen*, 44 F.R.D. 18, 21 (D.D.C. 1968) (the district court has jurisdiction to rule on a motion to intervene after a notice of appeal was filed where the D.C. Circuit had directed the district court to decide the motion); *c.f. Apostol v. Gallion*, 870 F.2d 1335, 1337 (7th Cir. 1989) ("[S]imultaneous proceedings in multiple forums create confusion and duplication of efforts.").

## II.     Motion to Intervene

### A.     Intervention As of Right

To intervene as of right under Rule 24(a)(2), a non-party must satisfy four requirements: (1) the motion must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the

4

disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) existing parties must not be adequate representatives of the applicant's interest. *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000). "Failure to satisfy any one of the four intervention factors is sufficient grounds to deny the intervention." *U.S. v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003) (citing *Vollmer v. Publishers Clearing House*, 248 F.3d 698, 705 (7th Cir. 2001)).

      i.      **Timeliness**

The Court evaluates whether an application to intervene is timely according to a reasonableness standard. *See People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 175 (7th Cir. 1995) (timeliness factor requires "potential intervenors to be reasonably diligent in learning of a suit that might affect their rights, and upon learning of such a suit, to act to intervene reasonably promptly"). A party may not intervene if it dragged its heels after learning of its interest in a lawsuit.[1] *See Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 438 (7th Cir. 1994). In determining whether a motion to intervene is timely, the Court looks to four factors: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; and (4) any other unusual circumstances. *See Sokaogon Chippewa Cmty.*, 214 F.3d at 949; *People Who Care*, 68 F.3d at 175.

Here, Spehar knew or should have known that his personal and professional interests were

---

[1] For purposes of this Opinion, the Court assumes that Spehar's asserted interests—his personal and professional reputation, his ability to earn a living as a financial advisor, and his CFA credential—are "direct, significant legally protectable interest[s]." *See Am. Nat'l Bank v. City of Chicago*, 865 F.2d 144, 146 (7th Cir. 1989).

affected by the litigation on October 30, 2007, when this Court granted discovery on the "unclean hands" issue and put Spehar's actions directly at issue in this case. In fact, Spehar concedes that he knew his CFA credential was affected by the lawsuit on this date. (*See* R. 173 at 4 ("I had previously disclosed Defendant's 'unclean hands' allegation to the CFA Institute after this Court opened discovery on that issue"); R. 205 at 4 ("I first notified the CFA Institute of the 'unclean hands' allegations in July 2008.").) Nevertheless, he chose not to move to intervene in this case until two-and-a-half years after the Court opened discovery on this issue, on April 28, 2010.

Spehar argues that his personal and professional interests were not truly affected until the Court issued its March 2010 Opinion. According to Spehar, "[n]o adverse affect to [his] personal interests could have been reasonably known or anticipated until this Court determined the 'unclean hands' issue in its Opinion." (R. 205 at 5.) The factual findings in the March 2010 Opinion, however, were not dreamed-up by the Court. On the contrary, they are based firmly in the record, specifically, in the parties' Local Rule 56.1 filings. Thus, at the very latest, at the time the Defendants moved for summary judgment on their "unclean hands" defense—May 29, 2009—Spehar knew the extent of the allegations against him, both personally and professionally. Instead of moving to intervene at this (or an earlier) point, Spehar chose to take a chance that the Court would deny the Defendants' Motion. Spehar has no legitimate reason for waiting so long to intervene. He "'dragged his feet' on an issue of which he had been aware for years." *See People Who Care*, 68 F.3d at 176 (affirming the district court's conclusion that the petitioner's motion was untimely despite his argument that the court's most recent order was the motivation for his motion). Thus, Spehar has failed to establish that he moved to intervene in a timely manner after he learned of the case's effect on his interests.

Moreover, allowing Spehar to intervene after the Court has entered final judgment would prejudice the Defendants, who have been litigating this case—with Spehar's knowledge—since 2006. The Defendants have consistently put Spehar's conduct at issue in this case. As early as November 30, 2006, when the Defendants moved to dismiss, their brief discussed Spehar by name, contending that he had "attempt[ed] to perpetrate a fraud on three courts and the system of justice generally." (R. 16 at 7.) The Defendants reiterated these charges in their Motion to Reconsider, filed on July 13, 2007, and again, more specifically this time, in their May 29, 2009 Motion for Summary Judgment. To allow Spehar to intervene now that the Court has affirmed the truth of many of these allegations would cause significant delay and would result in prejudice to the Defendants.

Finally, neither prejudice to Spehar nor the special circumstances of this case weigh in favor of intervention. The Court specifically found in its March 2010 Opinion that "Grochocinski acted at all times as a proxy for the real party in this case, SC." (R. 171 at 19.) Having directed this lawsuit from the beginning and being fully aware of the risks it may have to his personal and professional interests, Spehar cannot now contend that he has suffered prejudice. Further, despite Spehar's claims, Grochocinski has adequately represented Spehar's personal and professional interests before the Court. He has rebutted the Defendants' personal attacks against Spehar. For example, in his Response to the Defendants' Motion to Dismiss, Grochocinski asked the Court to strike the Defendants' "personal attacks" against himself and Spehar, (R. 22 at 4.), and in his Response to the Defendants' Motion to Reconsider, Grochocinski flatly denied that Spehar had committed fraud on any court. (*See* R. 53 at 6.) Further, in his Response to the Defendants' Motion for Summary Judgment, Grochocinski set forth the facts precisely as Spehar believes them to be. (*See* R. 150-52.) Spehar is not prejudiced by being denied the opportunity to reiterate the losing

arguments that Grochocinski has made to the Court on several occasions. Accordingly, the Court denies Spehar's Motion to Intervene as a Matter of Right as untimely. *See*, *e.g.*, *People Who Care*, 68 F.3d at 179 ("Finding the motion untimely, we need not address the other factors for consideration in a motion to intervene.").

### B. Permissive Intervention

In his Reply Brief, Spehar also seeks permissive intervention. Arguments raised for the first time in a reply brief are typically waived. *See Simpson v. Office of Chief Judge of Circuit Court of Will County*, 559 F.3d 706, 719 (7th Cir. 2009). Nevertheless, because Spehar is proceeding pro se, the Court will address his argument. Pursuant to Rule 24(b)(1)(B), the Court "may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." According to the Rule, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Like intervention as a matter of right, permissive intervention "is proper only where the application was timely." *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003). Thus, for the reasons discussed above, the Court also denies Spehar's Motion to Intervene Pursuant to Rule 24(b)(2).

### III. Motion to Alter or Amend

Because the Court denied Spehar's Motion to Intervene, it lacks jurisdiction over his Rule 59(e) Motion to Alter or Amend the March 2010 Opinion. *See Zbaraz v. Madigan*, 572 F.3d 370, 377 (7th Cir. 2009) ("Rule 59 requires that the person or entity filing the motion to alter the judgment be a "party" before the court."). Accordingly, the Court dismisses Spehar's Motion to Alter or Amend as moot.

**CONCLUSION AND ORDER**

For the reasons set forth above, the Court denies Spehar's Motion to Intervene and Dismisses his Motion to Alter or Amend as moot.

```
                                          _____
                                          Virginia M. Kendall
                                          United States District Judge
                                          Northern District of Illinois
```

Date: February 3, 2011